### ROBERT AHEARN v. THE STATE.

No. 3691.    Decided November 24, 1915.

**1.—Murder—Manslaughter—Charge of Court.**

Where, upon trial of murder, the defendant was convicted of that offense upon sufficient evidence, and the evidence did not raise the issue of manslaughter, the court's failure to charge thereon was not reversible error.

**2.—Same—Adequate Cause—Manslaughter.**

Where, upon trial of murder, the evidence showed that the deceased called the defendant a bastardly son-of-a-bitch, whereupon defendant fired the fatal shot, held that such language as used by the deceased did not constitute adequate cause, and did not raise the issue of manslaughter. Following Fitzpatrick v. State, 37 Texas Crim. Rep., 33, and other cases.

**3.—Same—Facts Stated in Opinion.**

Where some of the facts stated in the opinion were incorrect but not material to the issue, and the material facts were correctly stated, there was no reversible error.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of murder; penalty, twenty-five years confinement in the penitentiary.

The opinion states the case.

*W. W. Nelms,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant appeals from a conviction of the murder of Robert Burns, his punishment being assessed at twenty-five years in the penitentiary.

We have carefully read the statement of facts. We think the testimony, without any doubt, is ample to sustain the conviction. There is but one question to be discussed. Appellant claims that the evidence raised, and the court should have submitted, manslaughter. We are clearly of the opinion that the appellant's contention can not be sustained.

Appellant was a waiter in an all-night restaurant. Just after midnight the deceased, Burns, with a companion went into the restaurant to get a meal. They sat down at the eating counter. One of the State's witnesses, Mr. Conner, among other things, testified that the head waiter directed appellant to wait on Burns and his companion. Appellant said: "Let them son-of-bitches get out of here; I am not going to give them two orders." Burns said: "f—k them, Bob," and appellant replied: "You can not f—k me, you son-of-a-bitch, you haven't got enough money—" That appellant then went right in front of Burns, the narrow counter, about two feet wide only, separating them and said to Burns: "God damn you, if you want to start something, crack down." That other words passed between them and appellant whipped out a six-shooter, pointed it in the face of the deceased, when another one of his companion waiters told him to put up the gun and have no trouble. Very soon he snapped the pistol once in deceased's face, then immediately fired at him three times in succession, one ball striking him in the temple, going into his head and brains, which resulted in his death very soon afterwards. It appears that each used epithets towards the other, each calling the other with profane language a son-of-a-bitch. Appellant himself testified that during the wordy profanity and indecent language one towards the other, that deceased, Burns, said to him, " 'You G—d d—n bastardly son-of-a-bitch, if you will come outside I will kill you,' and I said, 'Burns, there is no use for any argument or any trouble,' and he said, 'Yes, G—d d—n you, you bastard,' " and that when Burns said that it made him mad; he lost control of himself and shot and killed him. He says, "I shot him because he called me a bastardly son-of-a-bitch." Mr. Fox testified he asked appellant why he shot deceased, and he replied, " 'I shot him because he said I was a son-of-a-bitch'; he didn't say anything else." The testimony of several other witnesses shows that appellant was very mad with Burns at the time. Appellant claimed that this language was insulting towards his mother, which raised the issue of manslaughter. This court, in a case very similar to this, Fitzpatrick v. State, 37 Texas Crim. Rep., 33-34, expressly held that where the deceased in that instance said to the appellant, "You G—d d—n mother f—g son-of-a-bitch," did not raise manslaughter. That "this was merely an insult to the defendant himself and not in the nature of a

slander or an insult towards a female relation." Also in Trevino v. State, 72 Texas Crim. Rep., 91, this court expressly held that where the deceased said to the appellant that he "was the son of a whore and disgraced" was no insult towards his mother and did not raise manslaughter. This court has also repeatedly in a large number of cases held that to call another "a son-of-a-bitch," or "a G—d d—n son-of-a-bitch," is no insult to the appellant's mother, and does not raise manslaughter.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### November 24, 1915.

PRENDERGAST, PRESIDING JUDGE.—In his motion for rehearing appellant calls our attention to an inaccurate statement in the original opinion on one point. In stating Mr. Conner's testimony, we stated he testified that the head waiter directed appellant to wait on Burns and his companion. This should have been on two negroes instead of deceased and his companion. What we quoted that appellant then said was directed to the head waiter about the negroes. To that statement deceased remarked as •quoted in the.opinion. However, we gladly make the correction to which appellant calls our attention.

Appellant next complains of this statement in the original opinion: "The testimony of several other witnesses shows that appellant was very mad with Burns at the time," claiming that this is not in accordance with the statement of facts. We have again read the statement of facts, and on this point it shows that said witness Conner, who was the first introduced by the State, on this subject, testified: "He (appellant) seemed to be in an ill-humor. He looked more .like a demon than anything else. He seemed to be very angry. He seemed to be excited then." On cross-examination on this point this witness, among other things, said: "He (appellant) appeared to be enraged when I looked at him. When I looked at this man he appeared to be angry, enraged and terribly excited." Mr. McKellar, the next witness for the State on this point, on cross-examination, testified: "I don't know that Ahearn appeared to be excited at the time the shots were fired, but he was sorter angry looking." Mr. Luth, the State's next witness, on redirect examination testifiel: "Ahearn never seemed to become angry before that time when they used that language." This testimony is all of the testimony on the subject of appellant being mad, except what appellant testified himself, which is stated in the original opinion.

The motion is overruled.

*Overruled.*