## KETON v. SILBERT et al.   (No. 6543.)

(Court of Civil Appeals of Texas. Austin.
Feb. 28, 1923. Rehearing Denied March
28, 1923.)

**1. Appeal and error ⬧1061(4)—Direction of verdict after argument held not reversible error where such direction was proper.**

Where a jury returned a verdict for defendants, direction by the court before they were discharged to return a verdict for plaintiff did not constitute error on the ground that under Rev. St. 1911, arts. 1970, 1971, the court must prepare and read his charge to the jury before argument, since, if a peremptory instruction is proper, it was immaterial whether the jury had returned a verdict.

**2. Trial ⬧194(11)—Instruction held erroneous as taking issue from jury.**

In an action by a landlord for rent against tenants and a guarantor of rent, where the only testimony as to the amount due was by the landlord, who was not certain as to the amount, an instruction that the landlord was entitled to some amount of rents up to the time his agent took possession of the premises was error as taking from the jury the question of whether the landlord had been paid in full up to that time.

**3. Trial ⬧140(2)—Uncorroborated testimony of a party to a suit is not sufficient to support a peremptory instruction.**

The uncorroborated testimony of a party to a suit, although uncontradicted, is not sufficient to support a peremptory instruction.

**4. Guaranty ⬧36(8)—Guarantor of rent held liable only for rent in arrears up to time third person was put into possession.**

In an action by a landlord against tenants and a guarantor of a lease for rent, in which plaintiff claimed that a trustee in bankruptcy of the tenants sold the lease to a third person, and defendants maintained that plaintiff put the third person in possession, the jury should be let determine what amount of rent, if any, was due when the third person was let into possession, and if the jury should find that the premises were assigned to the third person by the trustee, or relet by the landlord, the guarantor would be responsible only for rents accruing before the third person was put into possession.

**5. Landlord and tenant ⬧101½—Acceptance of lease by trustee in bankruptcy of tenants held to release tenant.**

In an action by a landlord for rent, where plaintiff claimed that a trustee in bankruptcy of the tenants took possession of the lease, which was disputed, the question should be submitted to the jury, and if they find that the trustee accepted the lease for the remainder of the term, the trustee would become the assignee, and the tenant would be released from responsibility, but, if they should find that the trustee went into possession only temporarily to administer the bankrupt estate, the status of landlord and tenant would exist between plaintiff and the tenants, unless plaintiff accepted a surrender of the lease from the trustee, and plaintiff would be entitled to rent until he exercised his option in the contract of lease to repossess the premises.

**6. Guaranty ⬧64, 65—Surrender of lease or assuming it by trustee in bankruptcy held to release guarantor of rent.**

In an action by a landlord against tenants and a guarantor of rent, if the jury should find that the trustee in bankruptcy of the tenants surrendered the premises to the landlord, who accepted them, or if the trustee sold a lease to a third person, the guarantor would not be liable for the rent.

**7. Bankruptcy ⬧255—Trustee or receiver may by acts assume lease.**

A trustee or a receiver may by his acts assume a lease contract of a bankrupt without expressly stating that he assumes it.

**8. Assignments for benefit of creditors ⬧235—Bankruptcy ⬧255—Receiver or trustee in bankruptcy or assignee for benefit of creditors accepting lease becomes personally liable for rent.**

A receiver or assignee in bankruptcy or assignee for benefit of creditors on electing to accept a lease belonging to the debtor or assignor becomes an assignee of the lease, and personally liable for rent, from which he can only discharge himself by assignment or surrender.

Appeal from District Court, McLennan County; Jas. P. Alexander, Judge.

Action by H. Silbert against Frank Keton and others. From judgment for plaintiff, on which execution was to issue against Frank Keton only, the named defendant appeals. Reversed and remanded.

Alva Bryan and W. L. Eason, both of Waco, for appellant.
Spell, Naman & Penland, of Waco, for appellees.

BLAIR, J.   This suit was instituted by H. Silbert against George, Paul, and Gus Costas, for rents eo nomine, and against Frank Keton, as guarantor of the Costases, in the payment of such rents, as per contract. A trial was had in the court below before a jury, and upon an instructed verdict, except as to the amount due as rents, the jury returned into court a verdict for appellee Silbert, allowing him the sum of $397.45.

Appellee Silbert brought the suit for rents as such, and appellant contends that by reason of placing John Maxwell, trustee in bankruptcy of the estate of Costas Bros., in possession of the premises, that appellee repossessed the same, and can only recover damages for a breach of contract, and that appellant is not liable upon his guaranty for damages, and further that plaintiff had taken

possession by reason of placing Bill Perdiche in possession of the premises, and that such repossession during the term of the contract by appellee became effective as of the date of the abandonment by Costas Bros., and that a suit for rents eo nomine would not lie, but that appellee Silbert's only remedy was a suit for damage for breach of contract, which appellant would not be liable for under his contract.

The judgment in this case provided that no execution issue against the Costas Bros., because of their discharge from liability in bankruptcy, but that execution issue against appellant, Keton. Keton alone appealed.

Appellant's motion for new trial was overruled, to which action of the court he excepted, gave notice of appeal, and here now presents his case for our determination.

, The facts in the case are as follows:

H. Silbert, the owner of a store building in the city of Waco, Tex., entered into a five-year lease contract with the Costas Bros., beginning September 1, 1915, and ending August 31, 1920, for a rental of $225 per month for the first two years, and $250 per month for the remaining three years, and by written contract Frank Keton guaranteed the payment of the rents for the first year of the lease, as per the lease contract. The only material provision in the lease necessary for a decision in this case is as follows:

"That, should said second parties fail to pay any installment of rent in full before the 5th day of the month in which it is due, first party shall have the right at his option without notice or demand, to declare due and payable all of the installments of rent provided in this lease and to become due hereunder and may re-enter and resume possession of said premises and relet the same for the remainder of the term for the best obtainable rent for the account of the said second parties, or upon such default first party may, at his option, without notice or demand, declare said contract canceled and terminated and re-enter and resume possession of said premises without prejudice to any remedies for arrears of rent or breach of contract and may enforce the performance of this contract by any modes provided by law." ·

At the time of the execution of the lease appellant, Keton, entered into the following contract of guaranty:

"Know all men by these presents that I, Frank Keton, of the county of McLennan, state of Texas, in consideration of the leasing of the above premises by the first party to the second parties, do hereby promise and agree a surety for the said second parties, lessees in the foregoing lease, that they will pay the monthly installments of rent in advance as the same become due as provided in the foregoing lease for the period of one (1) year, and in the event they, or any of them, shall fail to make such payments of the monthly installments of rent promptly in advance as they fall due, I hereby obligate and bind myself to pay the same, according to the terms of said lease; and any extension of time granted by first party to second parties of the payment of any installment of rent shall not in any manner release me.

"This contract of suretyship shall continue until the end of the first year of the lease, and may then be renewed at the option of the surety. ·

"Witness my hand this 6th day of August, A. D. 1915.          [Signed] Fr. Keton."

The lessees, Costas Bros., took possession of the premises under the above contract, and remained in possession until about the 1st of May, 1916, when they filed their voluntary petition in bankruptcy. Some time about the 1st of May, John Maxwell, as trustee in the bankruptcy estate of Costas Bros., went into possession of the premises, and later, on the 7th of June, 1916, sold the furniture and fixtures of Costas Bros., at public outcry; and, according to the testimony of appellee Silbert and another, also sold the leasehold for the remainder of the first year of the contract, which was approximately five months. This was denied by Maxwell, who stated that he only sold the furniture and fixtures, and remained in possession of the premises for the short period of time necessary to administer the estate of Costas Bros.

Appellee Silbert filed his claim in the bankruptcy court for the remaining portion of the first year of the life of the lease, and accepted $109.49 from the trustee in bankruptcy upon such claim.

The case was submitted to the jury upon a general charge of the court. The jury retired and returned a verdict in favor of the defendants, which the trial court refused to accept, and gave a peremptory instruction to find for appellee Silbert against the defendants, leaving the matter of the amount for the determination of the jury.

### Opinion. ·

[1] By his first proposition appellant seeks reversal of this case, because of the alleged error of the trial court in instructing a verdict for appellee Silbert after the close of the argument, and after the jury had returned a verdict for appellant, but before they were discharged by the court. The first proposition is that the provisions of articles 1970 and 1971 of the Revised Civil Statutes, which require the court to prepare and read his charge to the jury before argument, are mandatory, and it is reversible error for the court, after the jury has returned a verdict, to give additional instructions.

We do not sustain the assignment for the reason that, if the court is entitled to give a peremptory instruction in a case, then it becomes immaterial whether the jury had returned a verdict or not, if the instruction was given before the jury were discharged in the case.

[2, 3] We sustain appellant's second proposition that the uncorroborated testimony of

a party to a suit, although uncontradicted, is not sufficient to support a peremptory instruction. The court's instruction to the jury in this case that appellee Silbert was entitled to some amount of rents due up to the time that Perdiche took charge of the premises, thereby taking away from the jury the question of whether or not appellee Silbert had been paid in full up to that time, was error. We find from the record that only appellee Silbert testified as to the amount due him as rents, and that his mind was not clear, for he testified to two different amounts which he claimed to be due him, and his testimony was based upon memory rather than upon his books, if he had any. It has been the universal opinion of the courts, so, far as we have been able to ascertain, that the uncontradicted testimony of a party to a suit will not support an instructed verdict, and especially so where any circumstance of doubt be cast upon it. The authorities cited by appellant under this proposition are in point, and sustain his contention. Bank v. McWhorter (Tex. Civ. App.) 179 S. W. 1150; Dubinski v. Lang (Tex. Civ. App.) 111 S. W. 170; Pridgen v. Walker, 40 Tex. 138; Rayner v. Posey (Tex. Civ. App.) 173 S. W. 249; San Jacinto v. Ulrich (Tex. Civ. App.) 214 S. W. 779; Brannan v. Bank (Tex. Civ. App.) 211 S. W. 946.; Burleson v. Tinnin (Tex. Civ. App.) 100 S. W. 350; International & G. N. R. Co. v. Johnson, 23 Tex. Civ. App. 160, 55 S. W. 791; Railway v Decatur (Tex. Civ. App.) 193 S. W. 397; Wichita v. Berry (Tex. Civ. App.) 187 S. W. 421; Cochran v. Hamblen (Tex. Civ. App.) 215 S. W. 381. Therefore the court erred in instructing the jury as complained of by appellant.

We will not discuss the other assignments of error specifically, although some of them may be correct as an abstract proposition of law, but we will only discuss them generally, as an aid to the court, in view of another trial of this case.

We are of the opinion that the following propositions are necessary for the disposal of this case upon the pleadings and the proof as presented in this record:

[4] 1. The jury should be left free to determine from the evidence what amount, if any, was due as rents up to the time Maxwell, trustee, assigned the lease to Perdiche, if he did assign it, or up to the time appellee Silbert relet the premises to Perdiche, if he did relet the same. If the jury should find that Maxwell, as trustee in bankruptcy, assigned the lease to Perdiche, or that appellee relet same to Perdiche, then appellant Keton would only be responsible for rents accruing before the possession of the premises by Perdiche, if the jury should find that there were any rents in arrears at that time.

2. The court should ascertain through the jury whether or not Silbert had entered into a contract with Perdiche, as alleged, and, in the event he did so, appellant would be discharged from liability after the entry of Bill Perdiche upon the property. Under such contract with Silbert, he would be responsible for any amount that the jury may find to be due, until such possession by Perdiche.

[5] 3. We are of the opinion that the court should also ascertain whether or not John Maxwell, as trustee, actually took possession of the leasehold for the remainder of the first year of the term of the lease contract. This is a question of fact for the jury to determine, and, in the event they find that Maxwell as trustee accepted the lease on the property in question for the remainder of the first year of the term, he would thereby become the assignee of the lease, and the guarantor would not be responsible for the remainder of the year. In the event the jury should find that he did not accept the term for the balance of the first year, but merely went into possession for the purpose of a temporary administration of the bankrupt estate of Costas Bros., then he would not become the assignee of the lease contract, and the status of landlord and tenant would still exist between the Costas Bros. and appellee Silbert, unless appellee Silbert accepted a surrender of the lease from John Maxwell as trustee, at the time of the sale of the furniture and fixtures of Costas Bros. to Perdiche; and the said Silbert would be entitled to recover the rents due until such time as he should exercise his option under that portion of the contract set forth in this opinion, and repossess the premises.

[6] The trial court did not take into consideration the effect of the bankruptcy proceedings and the action of the trustee thereunder. Both the pleadings and proof required it to do so. We do not find any authorities by the Texas courts on the question, but the following propositions relative to the effect of bankruptcy upon a lease contract of the bankrupt has been well established in most of the state courts, as well as in the United States courts:

(1) We find only one authority that intimates that a lease which by its terms could not be assigned without the consent of the landlord (as the lease in this question provides) was undoubtedly canceled by the bankruptcy of the lessee. This we do not believe to be the law.

[7] (2) In another case, where it appeared that the assignee after his appointment surrendered the premises to the landlord, the court held, without expressly assigning such fact as its reason, that the bankruptcy terminated the lease. So in this case, if the jury should find that John Maxwell as trustee surrendered the premises to Silbert, who accepted the same from him, the guarantor Keton would thereby be released from liability for rents thereafter, or, if the said John Maxwell sold at public outcry the remainder

of the first year of the term to Perdiche, then the law would charge him as having exercised his option to assume the lease for the period sold, and Perdiche would become the assignee of the lease, and thereafter the guarantor Keton could not be held liable for the rents. All the authorities hold that a receiver or trustee, by his acts, may assume the lease contract of the bankrupt, without expressly stating that he did assume it.

[8] It is also well established by all of the authorities, so far as we can ascertain, that a receiver or assignee in bankruptcy, or an assignee for the benefit of creditors, if he elects to accept a lease belonging to the debtor or assignor, becomes by such election assignee of the lease, and personally liable on the covenant to pay the rent, of which liability he can only discharge himself by an assignment or surrender. This doctrine proceeds upon the ground that, on an election being made, the receiver or assignee becomes vested with the title to the leasehold interest, and a privity of estate is thereby created between the lessor and receiver or assignee by virtue of which the latter becomes liable on the covenants running with the land. It would follow that one who specifically guarantees the payment of rents of the bankrupt would be relieved of further liability upon the election of the trustee or assignee to assume the lease for the term or any considerable portion thereof; and his liability as guarantor would cease on the day of such election by the trustee or assignee.

For authorities on all of the above propositions, see 31 L. R. A. (N. S.) 270, notes and cases; 59 L. R. A. 673, notes and cases; L. R. A. 1916B, 1099, notes and cases; L. R. A. 1917A, 205 to 210, notes and cases; 33 L. R. A. (N. S.) 745 to 750, notes and cases; O'Connell v. East Tennessee V. & G. Ry. Co., 87 Ga. 246, 13 S. E. 489, 13 L. R. A. 398, 27 Am. St. Rep. 246; Sharon v. American Fidelity Co., 172 Mo. App. 309, 157 S. W. 972; St. Louis Bill Posting Co. v. Stanton, 172 Mo. App. 40, 154 S. W. 821.

For the reasons above stated, this case is reversed and remanded.

Reversed and remanded.