APEX CO. v. GRANT et ux. (No. 9363.)*

(Court of Civil Appeals of Texas. Dallas. June 27, 1925. Rehearing Denied Oct. 24, 1925.)

1. **Landlord and tenant** ⊕⇒277(3) — **Lessor's rights to forfeit lease, re-enter, etc., on lessee's default, held not forfeited by exercise of option to mitigate damages by securing other tenants.**

That lessor, on lessee's repudiation of contract, which authorized lessor, in case of default, to forfeit lease, re-enter and eject occupants or resume possession and relet premises for remainder of term for lessee's account, undertook to mitigate damages by securing other tenants, did not forfeit any of other rights; such stipulations being mere options leaving him free to refuse or avail himself of either.

2. **Landlord and tenant** ⊕⇒49(3)—**Lessor need not accept, to mitigate damages, other tenants in different business than lessee.**

Lessor, stipulating that building should be occupied as wall paper, paint, and glass store only, and that lessee should not sublet it or make alterations without lessor's written consent, was not bound to accept proffered subtenants, who would conduct automobile storage and garage business, lessening rental value, increasing fire hazard, and requiring substantial alterations, and hence was entitled to instruc-

tion, in action for lessee's breach of contract, not to consider such subtenants in determining whether lessor used reasonable diligence to realize all rents and revenues reasonably practicable from date of lessee's repudiation of contract to end of term.

**3. Appeal and error ⊂⊃1033(5)—Instruction held harmless as more favorable to appellant than facts warranted.**

In lessor's action for breach of lease contract, prohibiting use of building for other than designated purpose or subletting without lessor's written consent, any error in charge that, if business proposed to be conducted therein by subtenants proffered by lessee would have substantially impaired its rental value or required substantial alterations, lessor was not obliged to accept them as subtenants, was harmless to lessee, to whom it was more favorable than facts warranted.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by J. E. Grant and wife against the Apex Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Crane & Crane and H. E. Spafford, all of Dallas, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, for appellees.

JONES, C. J. In a suit in the district court of Dallas county, appellees, J. E. Grant and wife, recovered judgment against appellant, the Apex Company, a corporation, in the sum of $12,628.87 as damages for breach of a contract of lease. Appellee J. E. Grant was the owner of the building at the time the contract was made and at the time appellant repudiated the contract, but, pending the controversy between the parties, the building and lease contract were sold to J. M. Coleman. Previous to the trial of the case, however, Coleman conveyed the building and the lease contract to appellee Mrs. M. C. Grant, who is the wife of J. E. Grant. During all this time appellee J. E. Grant had active control of the building, either as owner or agent for the owners, and where the term "appellee" is used in this opinion it refers to J. E. Grant. The following are the facts:

J. E. Grant was the owner of a business house located on North Harwood street in the city of Dallas, Tex., and, as evidenced by a written contract, leased said building to appellant for a term of two years from January 1, 1921, for the sum of $19,200, payable in monthly installments of $800 on the 1st of each month. Appellant's business was that of a wholesale and retail dealer in wall paper, paint, and glass, and the sum of $580 was expended by the owner in making the building suitable for this business. After appellant had occupied the leased premises for approximately seven months, it notified appellee that its business had increased to such an extent that it was necessary to have more space and that it had leased another building. It asked permission of appellee to sublet said building for the remainder of the term of its lease, and asked consent for Sandusky & Beck to take over the said lease as its subtenants. Sandusky & Beck desired to use the building as a storeroom for automobiles and also as an automobile garage. Appellee declined to permit appellant to sublet the building to the proffered tenants, on the ground that it would increase the fire hazard and that the character of business, for which the proffered tenants would use the building, would tend to decrease its rental value and would change its character from that of a mercantile building, which carried a higher rental. Appellee insisted on appellant's carrying out its written contract of lease, though he signified that a tenant who would use the building for mercantile business would be acceptable to him as a subtenant. No other tender of a tenant was proffered appellee by appellant. After some correspondence and oral conversations between appellee and the representatives of appellant, appellant notified appellee that it would pay the monthly installments of rent under the contract up to and including the 30th day of September, 1921, but would not thereafter occupy the building or pay the rent, claiming the right to cancel the lease because of appellee's refusal to accept the proffered tenant. Appellee notified appellant of his denial of this right, and that he would insist on appellant's carrying out its contract. He also notified appellant if it did repudiate the contract as indicated, he would attempt to re-rent the building, but only for appellant's account, and would still hold it for whatever difference there might be in the contract rental and the amount of rental he might thus be able to receive.

The jury, on the special issue submitted, found that appellee used reasonable diligence to realize from the property all rents and revenues practicable for the remaining period of the contract. As this finding is abundantly supported by evidence, it is adopted as the finding of this court. The sum of $969.35 was realized by appellee as rental on the building for the remainder of the term of appellant's lease, and this sum was deducted from the balance due under the lease contract, interest being allowed on each monthly installment from the time it became due.

The lease contract had a stipulation that the building was "to be occupied as wholesale and retail wall paper, paint, and glass store, and not otherwise." The contract also contained the two following clauses:

"That the lessee shall not assign this agreement, or underlet the premises or any part thereof * * * or make any alteration in the

---

building or premises * * * without the consent of the lessor in writing; or occupy, or permit or suffer same to be occupied, for any business or purpose deemed extrahazardous on account of fire.

"In case of default in any of the above covenants, the lessor may enforce the performance thereof in any mode provided by law, and may declare the lease forfeited at his discretion, and he or his agent, or attorney, shall have the right without further notice or demand, to re-enter and remove all persons therefrom without being deemed guilty of any manner of trespass and without prejudice to any remedies for arrears of rent or breach of covenant, or he or his agent or attorney may resume possession of the premises and re-let the same for the remainder of the term at the best rent he may obtain, for account of the lessee, who shall make good any deficiency. * * *"

The cause was submitted to the jury on special issues, in which the jury was only required to answer the first issue submitted because of the finding made on this issue. As the questions to be decided on this appeal relate to the submission of this issue, it is copied in full:

"Did the owners of the property leased to the Apex Company use reasonable diligence to realize from the property all rents and revenues, reasonably practicable for the period from October 1, 1921, to December 31, 1922? By 'reasonable diligence' is meant such diligence as would have been used by an ordinarily diligent person under the same or similar circumstances.

"Such owners, while endeavoring to re-rent the premises in question, if they did so endeavor, were under no legal duty to rent the premises for any use which would substantially reduce its market rental value, after the expiration of the Apex lease, nor to rent same to any tenant or tenants who would require that substantial alterations or changes be made in the building before they would occupy same.

"If you believe from the evidence that the premises could have been rented to Sandusky & Beck, or either of them, but that the business Sandusky & Beck proposed to conduct therein would have substantially impaired the market rental value of the premises after the expiration of their occupancy, or if you believe that they would have required that substantial alterations or changes be made in the building before they would have occupied same, then such owners were not obliged to accept such persons as subtenants under the Apex Company, nor to rent the premises or any part thereof direct to Sandusky & Beck, or either of them, after the Apex Company ceased paying rent for same, if it did so cease.

"If you find that such owners did use such reasonable diligence, you are instructed to answer this question 'Yes.' If you find they did not use such diligence, you are instructed to answer this question, 'No.'"

Appellant, by timely objection to the manner of the submission of this issue, and by appropriate requested instructions, has duly presented to this court the questions that are herein discussed. Appellant's theory of this case may be thus summarized: (a) It was an issue of fact to be determined by the jury on the submission of an appropriately prepared special issue as to whether a reasonably prudent and careful landlord, under the circumstances, would have accepted Sandusky & Beck as tenants in an effort to prevent a loss of rent in consequence of the termination of the lease by appellant; (b) it was error for the court to restrict and modify its definition of "reasonable diligence" in the manner same was modified by the charge given in connection with this definition; (c) the charge making this modification amounted to and was a submission by general charge, and not by special issue.

A consideration of these questions necessitates the further finding of fact that appellee's premises had been used for an automobile storage room some time previous to its occupancy by appellant; that appellee, previous to the lease in question, had determined to change the character of the use of his building to a use for mercantile business, and, because of such determination, had declined to rent to Sandusky & Beck the building to be used as an automobile storeroom and garage; that while the building was vacant he also declined to enter into negotiations with others who desired to use the building for similar purposes; that the objection to Sandusky & Beck was to their business, and not to them, personally; that a building devoted to the use for which Sandusky & Beck desired to use this building carries a less rental value and an increased fire hazard; that Sandusky & Beck, in order to use the building, would have required substantial alterations in the building and at a substantial cost; that appellant offered to pay this cost, and also the increased cost of insurance incident to the occupancy of the building by Sandusky & Beck; that insurance could only be carried on this building for approximately 75 per cent. of its value and appellee had to carry the risk of 25 per cent. of its value.

[1] Appellee never released appellant from its rental contract, but at all times asserted all the rights given him that were incident to same. The mere fact that he undertook to secure tenants and thereby mitigate the damages occasioned by appellant's repudiation of its contract, did not operate as a forfeiture of any of these rights. It is doubtful if the breach of this contract placed any duty on appellee to secure other tenants for his building. Goldman v. Broyles (Tex. Civ. App.) 141 S. W. 283; Minnie Racke v. Brewing Ass'n, 17 Tex. Civ. App. 167, 42 S. W. 774; Davidson v. Hirsch, 45 Tex. Civ. App. 631, 101 S. W. 269; Robinson Seed & Plant Co. v. Hexter & Kramer (Tex. Civ. App.) 167 S. W. 749. Appellee was not bound to seek a tenant under the terms of the contract, for the stipulations in same in reference to what course might be pursued by him in case of the default of appellant in any of its obligations

are options which leave him free to avail himself of one of them, or to refuse to avail himself of either of them. The learned trial judge appears to have tried the case on the theory that appellee chose to act under the last option given in clause six as quoted above from the contract, and, as the same result is reached on each theory, we will pretermit the question just raised and discuss the case from the theory of the trial judge.

[2] The primary question then to determine is, does the evidence raise an issue of fact as to whether a duty rested upon appellant to accept the tenancy of Sandusky & Beck, for, if it does not, there can be no grounds for reversal on the assignments of error because of the manner in which issue No. 1 is given to the jury. At the time appellant and appellee entered into this contract, appellee was free to rent his building to whomsoever he pleased, and free to make any lawful stipulation as to the business to be conducted therein. He retained this right both as to tenant and business in the contract when he stipulated that appellant was not to use the building for any purpose other than that in which it was then engaged; that it was not to assign or sublet the building, or any part of it, or to make any alterations in the building or premises without his consent given in writing. When appellant demanded that he accept as subtenants Sandusky & Beck, who would conduct in said building a business that would tend to lessen its rental value, increase the fire hazard, and require substantial alterations, appellee was clearly within the rights he reserved to himself in the contract when he declined to give consent for such use and occupancy of his building. Appellant could not complain at this refusal, for it had voluntarily contracted that appellee should have the right and the privilege he exercised.

[3] Does appellant stand in a better, and appellee in a less favorable, attitude before the law by reason of appellant's illegal and unwarranted repudiation of its binding contract? We do not think so. As it did not have the right to compel appellee, at peril of the forfeiture of the contract, to accept Sandusky & Beck as tenants in lieu of itself, it clearly did not have the right to place a duty on appellee to accept Sandusky & Beck as his tenants after it repudiated its contract, even though damages for its illegal act might thereby be mitigated. As there rested no duty on appellee to accept Sandusky & Beck as tenants, no issue of negligence could be predicated on appellee's said act. In the view of this court, it was the plain duty of the trial court to instruct the jury that in answering special issue No. 1 the tenancy of Sandusky & Beck could not be considered. The charge complained of is more favorable to appellant than the facts warranted, and

it necessarily follows that, if there was any error in this charge, it is harmless, and that all of appellant's assignments of error in respect to this issue should be overruled.

All other assignments of error have been carefully considered, and the opinion reached that no reversible error is shown in any of them, and that this case ought to be affirmed.

Affirmed.