## SILBERT v. KETON et al.

No. 621.

Court of Civil Appeals of Texas. Waco.
April 24, 1930.

Rehearing Denied July 5, 1930.

Spell, Naman & Penland, of Waco, for appellant.

Alva Bryan and W. L. Eason, both of Waco, for appellees.

ALLAN D. SANFORD, Special Associate Justice.

This suit was instituted by appellant, H. Silbert, to recover of Costas Bros. as lessees, and of appellee Frank Keton as their surety, a balance of $1,015.51 claimed by appellant as rent on a certain building in Waco, Tex., for a period of five months, beginning April 1 and ending August 31, 1916. Appellant leased to Costas Bros., a firm composed of George, Paul, and Gus Costas, a certain building in the city of Waco for a period of five years, commencing September 1, 1915. The stipulated rental for the first year was $225 per month, payable in advance. Appellee Keton signed a written indorsement on said lease, in which he promised and agreed that lessees would pay each stipulated monthly installment of rental in advance as it became due for the period of one year, and in event of their failure to do so, obligated and bound himself to pay the same. Said firm entered into possession of the building and occupied the same until some time in April, 1916, when they filed a voluntary petition in bankruptcy. They abandoned the premises, and the trustee in bankruptcy took possession and held possession thereof until June 7, 1916, at which time he sold the property of the bankrupts situated therein to one Perdichi. Said trustee testified that he did not assume the lease nor sell the same as assets of the bankrupt estate. Some time during the month of August thereafter, appellant leased the building to said Perdichi for a term of years, beginning with September 1, 1916. Said firm was duly adjudged a bankrupt, and appellant promptly thereafter filed his claim in the bankrupt court for the stipulated rental on said premises for said remaining five months of the first contract year, and asserted his landlord's lien on the property of the bankrupts situated in said building to secure the same. His claim was allowed with such lien by that court, but after satisfying previous claims, the sum of only $109.49 was paid thereon by the trustee in bankruptcy. Appellant credited said payment thereon and brought this suit against Costas Bros. and Keton to recover the remainder due.

George and Paul Costas pleaded their discharge in bankruptcy. Gus Costas was a nonresident of the state, and appellant's suit against him was dismissed.

The case was submitted to a jury on special issues, in response to which they found, in substance, that:

(a) Appellant, some time between September 1, 1915, and August 31, 1916, took over the control and disposition of the rented premises.

(b) Appellant took over such control and disposition in April, 1916.

(c) At the time he took over such control and disposition there was no rent due.

(d) Appellee Keton, some time after Costas Bros. went into bankruptcy and prior to August 31, 1916, offered in good faith to pay appellant the amount due under said rental contract for the remaining five months of the first year, on condition that appellant would allow him to control the lease contract during that period.

(e) Appellant refused to accept said proposition.

The court rendered judgment that appellant take nothing by his suit against George Costas, Paul Costas, and appellee Keton, or either of them. Appellant presents said judgment for review.

## Opinion.

Appellant assails the finding of the jury that he took over the control and disposition of the premises in April, 1916, and says that such finding is contrary to the undisputed evidence. We have searched the statement of facts with painstaking care and have failed to find any testimony, direct or circumstantial, tending to show that appellant did or said anything that could be construed as resuming possession or control of the rented premises at any time prior to June 7, 1916, at which time Perdichi claims appellant told him that he could occupy the premises until the 1st day of September thereafter without paying any rent. Appellant's contention is sustained.

Appellee asks us to affirm the judgment of the trial court on the findings of the jury that after the bankruptcy and before August 31st thereafter, he offered to pay appellant

the amount due for the remaining five months of the first contract year on condition that he should be allowed to control the premises during that period, and that appellant refused such offer. Appellee pleaded in substance that appellant, by the exercise of reasonable diligence, could have rented said building for an amount equal to the rent stipulated in said lease, and that certain persons applied to him to rent said building and offered to pay therefor the rental so stipulated, and that appellant refused to rent the same to them and wholly failed to exercise reasonable diligence to rent said building to anyone. The lease contract provided, in substance, that in event the lessees made default in the payment of any installment of rent, appellant might at his option re-enter and resume possession of said premises and relet the same for the remainder of the term for the best obtainable rent for the account of said lessees, or that he might at his option declare said contract canceled and terminated and re-enter and resume possession of said premises without prejudice to any remedies for arrears of rent or breach of contract. The lease contract further provided that the lessees should not assign or sublet the premises, or any part thereof, without the written consent of appellant, and that they should not use said premises for any business deemed more hazardous as a fire risk. The only testimony on this subject was given by appellee. After testifying that he met appellant on the street shortly after the bankruptcy and before the sale of the assets of the bankrupts by the trustee, and had a conversation with him, appellee further testified:

"We began to have a conversation about the rent, and I says that I will pay him, and he begins to shook his head, and he said, 'No,' and I says, 'I'll tell you what, I make you another proposition; I will pay you all in advance, providing you turn the house over to me,' and he says, 'No, I want to get more money for it,' and I says, 'That is what I am trying to do; I am trying to get that too, because I can get three hundred and twenty-five dollars for it instead of two hundred and twenty-five,' which I had a tenant to rent it to at, and he says, 'I ain't in a business trip.' * * * I did not mention the amount of money I would offer to pay him in cash. In fact, I didn't know exactly what it amounts to * * * First I offered to pay him the rent, what I mean, month by month, and he says 'No'; then I offered him the whole amount in advance provided he would turn the house over to me, but the amount wasn't discussed."

Appellant objected to the submission of said issues (d) and (e) on the grounds, among others, that the same were wholly immaterial; that a finding thereon would not constitute any defense to appellant's demands, in that the same constituted a new offer and appellant was under no legal duty to accept the same; that his refusal to do so could not in any way affect his rights under the lease contract; and, further, that said issues were not supported by any pleadings. Appellant assigned as error the submission of said issues over his objections and complains of such action in propositions germane thereto.

The only issue raised by appellee's said pleadings was the alleged failure of appellant to relet the premises for the remainder of the term when he had an opportunity to do so. While the right to relet the premises for the account of the lessees was expressly reserved in the lease contract, it was further stipulated therein that such action was to be only at the option of appellant. In the absence of a contractual obligation to relet, the failure or refusal of appellant to do so did not terminate the lease nor discharge appellee from his obligation to pay the rent stipulated therein. Ogus, Rabinovitch & Ogus Co. v. Foley Bros. Dry Goods Co. (Tex. Civ. App.) 241 S. W. 267, 273, par. 10 (modified on another point and affirmed [Tex. Com. App.] 252 S. W. 1048 et seq.); Racke v. Anheuser-Busch Brewing Association, 17 Tex. Civ. App. 167, 42 S. W. 774, 775; Goldman v. Broyles (Tex. Civ. App.) 141 S. W. 283, 286, 287, par. 6; Apex Co. v. Grant (Tex. Civ. App.) 276 S. W. 445, 448, par. 2 (writ refused).

Appellee, merely because he was a surety, had no greater rights than the lessees. He had no right to demand, as a condition to the discharge of the obligation assumed by him as surety on said lease, that he should be permitted to sublet the premises to whomsoever he chose, free from the restrictions contained therein. Appellee's request is overruled and appellant's assignment is sustained.

Should the evidence upon another trial show that appellant re-entered or repossessed said premises before the expiration of the first year of the lease, and should the jury so find, such action on his part would not under the express provisions of the lease defeat his right to recover the rent, if any, in arrears at that time. 35 C. J. p. 1194 (first column).

The judgment of the trial court is reversed, and the cause is remanded.

STANFORD, J.

Not being able to agree with my associates, I here file the following dissenting opinion:

Appellant brought this suit against George, Paul, and Gus Costas and Frank Keton, alleging that the three first named parties leased from appellant a certain piece of property in Waco for a period of five years, beginning September 1, 1915, at a monthly rental of $225 for the first two years and $250 per month for the remaining three years, and that appellee Frank Keton agreed with appel-

lant, as surety for said lessees, to be responsible for the payment of the monthly installments of rent in advance as the same became due for the first year of said lease. Appellant alleged further that the installments of rent that became due on the 1st of April, May, June, July, and August, 1916, being the last five months of the first year of said lease, had not been paid, except $109.49 received from the trustee in bankruptcy in the bankruptcy proceedings of the said lessees. Gus Costas, being a nonresident of the state, was dismissed from the suit. George and Paul Costas pleaded their discharge in bankruptcy. Appellee Keton pleaded several defenses, to which reference will hereafter be made.

Among other findings not necessary to a disposition of this case, the jury found:

(1) That between September 1, 1915, and August 31, 1916, the plaintiff, Silbert, did take over the control and disposition of the premises covered by the lease involved herein.

(2) That at the time plaintiff, Silbert, took over the control and disposition of the premises covered by the lease involved herein, there was no rent due.

The court entered judgment for appellee Keton and also for George and Paul Costas on their plea of discharge in bankruptcy. Appellant has duly appealed and presents the record here for review. This is the second appeal in this case, the former appeal being reported in (Tex. Civ. App.) 250 S. W. 316.

I do not find it necessary to discuss all the questions raised by appellant, nor to consider his assignments in the order presented. Appellant in no way questions the sufficiency of the evidence to support the first finding of the jury above, but does challenge the sufficiency of the evidence to support the second finding; and this question, as I view the case, is the only one necessary to be considered in determining this appeal. Appellant sued for rent for the last five months of the first year of the lease, to wit, for April, May, June, July, and August, at $225 per month. The record shows conclusively that about May 1, 1916, the lessees, Costas Bros., were adjudged bankrupts, and that on or about said date a trustee was appointed, who took charge of the property of the bankrupts situated in the building in question, and said trustee, as such, with said property occupied said building until June 7th or 8th, at which time the property, consisting of restaurant fixtures, etc., were sold to Bill Perdichi, who at once took charge of said restaurant and continued to occupy said building until September 1, 1916, the end of the first year of said lease. The evidence is ample to support the finding of the jury that appellant did take over the control and disposition of the premises during the first year of said lease, and the time he did so, if he did, is established by the evidence without conflict as June 7 or 8, 1916. Appellant having taken over the control and disposition of the lease on June 7, 1916, and leased same to Bill Perdichi for the remainder of the first year, to September 1, 1916, it necessarily follows appellee Keton was not liable for any rent after June 7, 1916, the date appellant leased same to Bill Perdichi. Was any rent due appellant by appellee Keton on June 7, 1916, at the time he took over the property and rented it to Perdichi? In passing upon this question, it is thought, we should remember that appellant was the only witness who testified that the April rent had not been paid, and he seems to have relied solely upon his memory, for he produced no books or written evidence of any kind. We should also bear in mind that appellant was the plaintiff seeking a recovery, and was financially interested, and that the jury saw and observed his manner while upon the stand testifying and was in a position far better than this court to pass upon his credibility. The jury had the right to reject his evidence, even though not contradicted. On the last trial the evidence on the point here involved was practically the same as on the former trial, and on the appeal therefrom the appellate court held, correctly, I think, such issue was one for the jury. Keton v. Silbert (Tex. Civ. App.) 250 S. W. 316, and cases there cited. Costas Bros., for reasons apparent from the record, were not interested in the result of this suit, and were not accessible and did not testify. Appellee Keton being liable only as a surety for Costas Bros., and they having promptly paid the rent, as far as the record discloses, up to the time they were adjudged bankrupts, he had no occasion for keeping a record or having knowledge of the condition of said rent account.

There are circumstances tending to show that the rent was paid for April, 1916. The lease contract began September 1, 1915, and was payable in monthly installments of $225 per month in advance, the first installment being due September 1, 1915, and a like installment in advance on the 1st day of each month thereafter. The lease further provided if any installment was not paid in advance by the 5th of any month, the lessor had the right to declare it all due, repossess the property, etc. As far as the record shows, Costas Bros. paid said installments promptly in advance on the 1st of each month from September 1, 1915, to April 1, 1916. The lessees were not adjudged bankrupts until May 1, 1916. There was no claim made to Keton, the surety, that the April, 1916, rent was not paid until long after Costas Bros. were discharged in bankruptcy, and some or all of said lessees had left the state. If the April rent had not been paid by the 5th of said month, it is reasonable to suppose that appellant would have taken some steps to collect same, and it is unreasonable to suppose that appellant would have let the entire month of

April, May, and a part of June pass, until Costas Bros. were discharged in bankruptcy and gone, before making any claim to the surety Keton that the April, 1916, rent was not paid, when he had the right and could have presented his bill for the $225 April rent to the surety Keton on April 5th, or any day thereafter, and collected same. There are other circumstances that tend to support the finding of the jury. There being evidence to support the finding of the jury that at the time appellant took over the control and disposition of the premises there was no rent due him by appellee Keton, this court, it is thought, should not disturb such finding. Cartwright et al. v. Canode, 106 Tex. 502, 171 S. W. 696, and cases cited.

The writer is of opinion the judgment of the trial court should be affirmed.