BROKEN SPOKE CLUB, INC. ET AL. V. BUTLER

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-116-CV

BROKEN SPOKE CLUB, INC. AND APPELLANTS

ROBERT G. KAISER

V.

JAMES MAURICE BUTLER APPELLEE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellants Broken Spoke Club, Inc. and Robert G. Kaiser appeal from the trial court’s judgment ordering that they take nothing as to their claims against  Appellee James Maurice Butler and ordering Appellants, among other things, to pay $68,265 to Appellee.  In two issues, Appellants argue that:  (1) the trial court improperly calculated the amount of damages for unpaid rent recoverable by Appellee; and (2) the trial court abused its discretion in denying their motion to strike the case from the non-jury docket.  We will affirm.

Factual Background and Procedural History

Appellee Butler owned property at the intersection of Highway 423 and Highway 720 in Denton County, Texas.  In 1998, Appellee leased the premises including the property, bar, club, and fixtures known as the Broken Spoke Saloon for three years to Appellants.  Appellant Kaiser was the owner and operator of the Broken Spoke Club, Inc.  Appellants agreed to pay Appellee $4,000 per month in rent, and they paid Appellee $10,000 as a security deposit.  On January 5, 2000, Appellants filed suit against Appellee, seeking injunctive relief, a restraining order, and damages relating to alleged fraud and misrepresentation in the execution of the 1998 lease.

Appellee filed an answer and counterclaim on January 21, 2000.  The building on the leased premises burned on April 20, 2000.  On August 3, 2000, Appellee amended his original answer, requesting a declaration of proceeds from the casualty insurance company, alleging failure of consideration excusing defendant’s performance, and alleging Appellants’ failure to pay property taxes and past due rent.

The trial court conducted a bench trial on February 28, 2001 and May 7, 2001.  After Appellants rested, Appellee requested a judgment that Appellants taking nothing for any of their claims.  The court granted Appellee’s motion, and on May 14, 2001, the trial court signed an interlocutory judgment ordering that Appellants take nothing.  The court also directed Appellants “to rebuild and repair the buildings situated upon the premises” and directed the district clerk to disburse certain insurance funds deposited in the registry of the court.  The court conducted further proceedings on October 19, 2001 concerning Appellee’s counterclaim.  On January 8, 2002, the trial court signed a final judgment, incorporating the interlocutory judgment and further ordering Appellants to pay Appellee $42,500 for unpaid rent, $15,765 for unpaid taxes, and $10,000 for attorneys’ fees (a total judgment of $68,265).

Amount of Damages

In their first issue, Appellants complain that they should have been allowed offsets for the $10,000 security deposit paid at the time the lease was signed and for rent received from third parties during the term of the lease.  Appellee responds that Appellants received the appropriate offset for subsequent rentals.  Further, Appellee maintains that Appellants failed to plead for refund of the security deposit and that nothing remained of that deposit, anyway, due to the damages to the premises.

“A landlord has a duty to mitigate damages if a tenant abandons the leased premises in violation of the lease.”  
Tex. Prop. Code Ann
. § 91.006(a) (Vernon Supp. 2004-05); 
see Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc
., 948 S.W.2d 293, 299 (Tex. 1997) (holding that a landlord must “use objectively reasonable efforts to fill the premises when [a] tenant vacates in breach of the lease”).  
Austin Hill
 emphasizes that a landlord’s failure to mitigate does not “give rise to a cause of action by the tenant.”  948 S.W.2d at 299.  Instead, “the landlord’s failure to use reasonable efforts to mitigate damages bars the landlord’s recovery against the breaching tenant only to the extent that damages reasonably could have been avoided.  Similarly, the amount of damages that the landlord actually avoided by releasing the premises will reduce the landlord’s recovery.”  
Id
.

On appeal, Appellants do not contend that Appellee failed to use reasonable efforts to mitigate damages, but they argue that the trial court improperly calculated the amount of damages Appellee avoided by releasing the property to a third party.  
See id
.  Appellants bore the burden of proof as to the amount Appellee reduced his damages by releasing the property.  
See id
.  Thus, we turn to the evidence Appellants rely on to support their claim for reducing Appellee’s damages for unpaid rent.

The trial court ordered Appellants to pay $42,500 for unpaid rent. According to Appellee, Appellants failed to pay rent in the amount of $4,000 per month for eleven months, which totals $44,000.
(footnote: 2)  Appellants cross-examined Appellee about rent he received during this eleven-month period.  Appellee testified that after the fire occurred in April 2000, he leased the property to Steve Justice as follows:

Q.  When did you lease the premises to that gentleman?

A.  For the 4th of July, started the 4th of July from 2000.

Q.  When you say for the 4th of July, you leased the premises for one day, 4th of July only?

A.  No.  Fireworks season runs ten days around the 4th of July and ten days around New Year’s.

Q.  Can you tell me the terms and conditions of the lease you had with the gentleman for the lease for fireworks?

A.  He paid me $1,500.

Q.  He paid you $1,500 for what?

A.  To pull his fireworks stand out and set it in my parking lot and sell fireworks.

. . . .

Q.  So Mr. Justice paid you one payment of $1,500 to lease the premises after the fire?

A.  To put his fireworks stand over in the corner of my parking lot, yes.

Q.  Okay.  And has he since vacated the premises?

A.  He has.  Another company leases it now.

Q.  Well, let me ask you this, then, to save time.  Since the fire of April of 2000, how many other tenants have you leased the premises in question to?

A.  I leased it to Mr. Justice for the 4th of July last year, over New Year’s of last year, and for the 4th of July this year.

Q.  And that’s only $1,500 total?

A.  No.  For all three times that totaled $7,500.

Q.  Okay.  Anyone else?

A.  At present I have a verbal lease.  The Alamo Fireworks people will be leasing it for New Year’s and the next 4th of July.

Q.  And how much are you going to -- how much rent will they pay to you as the landlord for the premises?

A.  $6,000.

Q.  And who is the person’s name again for the $6,000?

A.  Alamo Fireworks.  I don’t know who the individual is that owns that.

Q.  Alamo Fireworks?

A.  Yes.

Q.  Okay.  Anyone else besides Alamo Fireworks and Mr. Justice?

A.  No.

Q.  And as it pertains to these two tenants, their lease with you was after the fire and before February of 2001; is that correct?

A.  That’s correct.

Q.  Okay.  And you made a total of $13,500 from these two tenants?

A.  I have not made that yet.

Q.  But you leased with these two tenants --

A.  I have made $7,500 to date.

Q.  But based on the lease with these two tenants, you are to make $13,500?

A.  By the end of 4th of July of 2002.

Appellants and Appellee signed their lease on January 20, 1998, but the lease began on February 1, 1998 and expired on January 31, 2001.  Appellants point to Appellee’s testimony and argue that Appellee received rent from Justice for the two fireworks seasons surrounding the Fourth of July in 2000 and New Year’s Eve on December 31, 2000, both of which were within the term of the 1998 lease.  Appellants argue that, in addition to the $1,500, they should receive a further offset of $3,000, for a total offset of $4,500.  Appellee asserts that the further claimed offset is for rentals after the expiration of Appellants’ lease and that the trial court correctly applied only the $1,500 as an offset to the $44,000 that Appellants owed in back rent.

Appellee testified that, while he received $1,500 for the July 4, 2000 holiday period, he also received a total of $7,500 for July 4, 2000, December 31, 2000, and July 4, 2001.  Appellee, however, did not specify what amount he actually received for either of the December 31, 2000 and July 4, 2001 dates.  Appellants argue that we should infer from Appellee’s testimony that he leased the property for $3,000 for the December 31, 2000 New Year’s Eve holiday.

We cannot indulge Appellants’ request that we “infer” the amount Appellee collected from Justice for the lease covering the December 31, 2000 New Year’s Eve holiday.  It is well settled that damages must be based on competent evidence and not on mere speculation.  
McIver v. Gloria
, 140 Tex. 566, 169 S.W.2d 710, 712 (1943); 
Citizen’s Nat’l Bank v. Allen Rae Invs., Inc
., No. 2-02-095-CV, 2004 WL 1595732, at *15 (Tex. App.—Fort Worth July 15, 2004, no pet. h.) (op. on reh’g); 
Barbouti v. Munden
, 866 S.W.2d 288, 296 (Tex. App.—Houston [14
th
 Dist.] 1993, writ denied), 
overruled on other grounds by Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.
, 960 S.W.2d 41, 47 (Tex. 1998); 
Lakewood Pipe of Tex., Inc. v. Conveying Techniques, Inc
., 814 S.W.2d 553, 556 (Tex. App.—Houston [1
st
 Dist.] 1991, no writ) (op. on reh’g).  Here, Appellants failed to meet their burden of proving with competent evidence the amount of rent Appellee collected from Justice 
before
 their own lease expired with Appellee, other than the $1,500.  
See
 
Austin Hill
, 948 S.W.2d at 299.  Accordingly, we hold that the trial court did not err in ordering Appellants to pay Appellee the amount of $42,500 for unpaid rent.

As to Appellants’ claim for a refund of their security deposit, Appellants make no argument and cite no authority to support their contention that the trial court erred by not allowing their security deposit to be applied as an offset to their unpaid rent.
(footnote: 3)  Therefore, this argument is waived, and we will not address it.  
See
 
Tex. R. App. P
. 38.1(h) (requiring appropriate citations to authorities); 
Fredonia State Bank v. Gen. Am. Life Ins. Co
., 881 S.W.2d 279, 284 (Tex. 1994) (citing long-standing rule that point may be waived due to inadequate briefing).  Accordingly, we overrule Appellants’ first issue.

Request to Strike Case from Non-Jury Docket

In their second issue, Appellants argue that the court abused its discretion when it denied their motion to strike the case from the non-jury docket.  We review a court’s denial of the right to a jury trial under the abuse-of-discretion standard.  
See Mercedes-Benz Credit Corp. v. Rhyne
, 925 S.W.2d 664, 666 (Tex. 1996).  We must review the entire record to determine whether the denial was arbitrary, unreasonable, and without reference to guiding principles.  
Id
. (citing 
Downer v. Aquamarine Operators, Inc
., 701 S.W.2d 238, 241-42 (Tex. 1985)).

“No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.”  
Tex. R. Civ. P.
 216(a).  Further, “[u]nless otherwise provided by law, a fee of ten dollars if in the district court and five dollars if in the county court must be deposited with the clerk of the court within the time for making a written request for a jury trial.”  
Tex. R. Civ. P.
 216(b). 

Here, Appellants timely paid the jury fee, but they did not make a written request for a jury trial.  This case was set for trial on February 2, 2001, but upon Appellants’ motion for continuance, the trial was reset for February 28, 2001.  On February 9, 2001, Appellants filed a motion to strike the case from the non-jury docket.  When the trial court heard arguments on Appellants’ motion to strike on February 23, 2001, they had not made a written request for a jury trial.  
See
 
Tex. R. Civ. P.
 216(a).  Accordingly, we hold that the trial court did not abuse its discretion in denying Appellants’ motion to strike the case from the non-jury docket in the absence of a timely written request for a jury trial.  
See id
.; 
Mercedes-Benz
, 925 S.W.2d at 666.  We overrule Appellants’ second issue.

Conclusion

Having overruled both of Appellants’ issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  August 19, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Appellants do not dispute this testimony on appeal.

3:
We also observe that Appellants did not plead for the return of their security deposit and offered no proof that Appellee did not return their security deposit or that Appellee wrongfully withheld the deposit.  
See
 
Tex. Prop. Code Ann.
 §§ 93.004-.006, 93.011 (Vernon Supp. 2004-05) (governing commercial tenancy security deposits).