AUSTIN HILL COUNTRY REALTY, INC. d/b/a Re/Max Austin Hill Country Realtors, Barbara A. Hill, Annette V. Smith and David J. Jones, Petitioners

v.

PALISADES PLAZA, INC. d/b/a The Palisades, Respondent.

No. 95–1273.

Supreme Court of Texas.

Argued Sept. 4, 1996.

Decided July 9, 1997.

William Rushing Hemphill, Geoffrey D. Weisbart, David F. Minton, Barry K. Bishop, Austin, for Petitioners.

Kenneth D. Lerner, Austin, for Respondent.

SPECTOR, Justice, delivered the opinion for a unanimous Court.

We overrule the motion for rehearing. We withdraw our opinion of January 10, 1997, and substitute the following in its place.

The issue in this case is whether a landlord has a duty to make reasonable efforts to mitigate damages when a tenant defaults on a lease. The court of appeals held that no such duty exists at common law. 938 S.W.2d 469. We hold today that a landlord has a duty to make reasonable efforts to mitigate damages. Accordingly, we reverse the judgment of the court of appeals and remand for a new trial.

## I.

Palisades Plaza, Inc., owned and operated an office complex consisting of four office buildings in Austin. Barbara Hill, Annette Smith, and David Jones sold real estate in Austin as a Re/Max real estate brokerage franchise operating through Austin Hill Country Realty, Inc. On September 15, 1992, the Palisades and Hill Country executed a five-year commercial office lease for a suite in the Palisades' office complex. An addendum executed in connection with the lease set the monthly base rent at $3,128 for the first year, $3,519 for the second and third years, and $3,910 for the fourth and fifth years. The parties also signed an improvements agreement that called for the Palisades to convert the shell office space into working offices for Hill Country. The lease was to begin on the "commencement date," which was defined in the lease and the improvements agreement as either (1) the date that Hill Country occupied the suite, or (2) the date that the Palisades substantially completed the improvements or would have done so but for "tenant delay." All parties anticipated that the lease would begin on November 15, 1992.

By the middle of October 1992, the Palisades had nearly completed the improvements. Construction came to a halt on October 21, 1992, when the Palisades received conflicting instructions about the completion of the suite from Hill on one hand and Smith and Jones on the other. By two letters, the Palisades informed Hill Country, Hill, Smith, and Jones that it had received conflicting directives and would not continue with the construction until Hill, Smith, and Jones collectively designated a single representative empowered to make decisions for the trio. Hill, Smith, and Jones did not reply to these letters.

In a letter dated November 19, 1992, the Palisades informed Hill Country, Hill, Smith, and Jones that their failure to designate a representative was an anticipatory breach of contract. The parties tried unsuccessfully to resolve their differences in a meeting. The Palisades then sued Hill Country, Hill, Smith, and Jones (collectively, "Hill Country") for anticipatory breach of the lease.

At trial, Hill Country attempted to prove that the Palisades failed to mitigate the damages resulting from Hill Country's alleged breach. In particular, Hill Country introduced evidence that the Palisades rejected an offer from Smith and Jones to lease the premises without Hill, as well as an offer from Hill and another person to lease the premises without Smith and Jones. Hill Country also tried to prove that, while the Palisades advertised for tenants continuously in a local newspaper, it did not advertise in the commercial-property publication "The Flick Report" as it had in the past. Hill Country requested an instruction asking the jury to reduce the Palisades' damage award by "any amount that you find the [Palisades] could have avoided by the exercise of reasonable care." The trial judge rejected this instruction, stating, "Last time I checked the law, it was that a landlord doesn't have any obligation to try to fill the space." The jury returned a verdict for the Palisades for $29,716 in damages and $16,500 in attorney's fees. The court of appeals affirmed that judgment. 938 S.W.2d 469.

## II.

■ In its only point of error, Hill Country asks this Court to recognize a landlord's duty to make reasonable efforts to mitigate damages when a tenant breaches a lease. This Court's most recent, and most thorough, discussion of mitigation appeared in *Brown v. RepublicBank First National Midland,* 766 S.W.2d 203 (Tex.1988). The issues in *Brown* were whether a termination right in one contract was impliedly included in a sublease agreement between the same parties and, if not, whether the landlord had a duty to mitigate damages upon the tenant's breach. *Id.* at 204. We held that the termination right was incorporated into the sublease. *Id.* The tenant thus had properly terminated the sublease agreement, and we did not reach the mitigation issue. *Id.*

Five justices of this Court, however, expressed that they would hold that a landlord has a duty to mitigate damages after a tenant defaults. *Id.* at 204 (Kilgarlin, J., concurring, joined by Spears, Gonzalez, and Mauzy, JJ.); *id.* at 207–08 (Phillips, C.J., dissenting). The concurrence emphasized the contractual nature of modern leases, noting that a covenant to pay rent is like any other contractual promise to pay. *Id.* at 206 (citing *Schneiker v. Gordon,* 732 P.2d 603, 610 (Colo.1987)). The concurring justices and the dissenting Chief Justice concluded that public policy requires a landlord, like all other aggrieved parties to a contract, to mitigate damages. *Id.* at 206 (Kilgarlin, J., concurring); *id.* at 207–08 (Phillips, C.J., dissenting).

Today we face the issue that *Brown* did not reach: whether a landlord has a duty to make reasonable efforts to mitigate damages upon the tenant's breach. Because there is no statute addressing this issue, we look to the common law. John F. Hicks, *The Contractual Nature of Real Property Leases,* 24 BAYLOR L.REV. 443, 446–53 (1972).

The traditional common law rule regarding mitigation dictates that landlords have no duty to mitigate damages. *See* Dawn R. Barker, Note, *Commercial Landlords' Duty upon Tenants' Abandonment—To Mitigate?,* 20 J. Corp. L. 627, 629 (1995). This rule stems from the historical concept that the tenant is owner of the property during the

lease term; as long as the tenant has a right to possses the land, the tenant is liable for rent. *See Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 902, 905 (Utah 1989). Under this rule, a landlord is not obligated to undertake any action following a tenant's abandonment of the premises but may recover rents periodically for the remainder of the term. *See Gruman v. Investors Diversified Servs.,* 247 Minn. 502, 78 N.W.2d 377, 379–80 (1956).

In Texas, the traditional common law rule was first adopted in *Racke v. Anheuser-Busch Brewing Ass'n,* 17 Tex.Civ.App. 167, 42 S.W. 774, 775 (Galveston 1897, no writ). In *Racke,* a landlord sued to determine the extent of the tenant's liability for holding over past the lease term. Concluding that the holdover rendered the tenant liable under a new tenancy for one year, the Court of Civil Appeals held that the landlord could not "be subjected to damages for failing to let the premises to another, to prevent rents accruing the [tenant]." *Id.*

Texas courts have consistently followed this no-mitigation rule in cases involving a landlord's suit for past due rent. *See, e.g., Metroplex Glass Ctr., Inc. v. Vantage Properties, Inc.,* 646 S.W.2d 263, 265 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Apex Co. v. Grant,* 276 S.W. 445, 447 (Tex.Civ.App.—Dallas 1925, writ ref'd); *see generally* E.L. Kellett, Annotation, *Landlord's Duty, On Tenant's Failure to Occupy, or Abandonment of, Premises, to Mitigate Damages by Accepting or Procuring Another Tenant,* 21 A.L.R.3d 534, 555–56 (1968).

Some Texas courts have, however, required a landlord to mitigate damages when the landlord seeks a remedy that is contractual in nature, such as anticipatory breach of contract, rather than a real property cause of action. *See Employment Advisors, Inc. v. Sparks,* 364 S.W.2d 478, 480 (Tex.Civ.App.—Waco), *writ ref'd n.r.e. per curiam,* 368 S.W.2d 199, 200 (Tex.1963); *see also Evons v. Winkler,* 388 S.W.2d 265, 269 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.). In *Sparks,* the landlord sued the tenant for anticipatory repudiation of the lease. The court of appeals observed that, because the landlord pursued a contractual remedy, the landlord's damage recovery was "subject, of course, to the usual rules concerning mitigation." 364 S.W.2d at 480. In refusing writ *per curiam,* this Court expressed no opinion on the appellate court's holding. 368 S.W.2d at 200.

Other Texas courts have required a landlord to mitigate damages when the landlord reenters or resumes control of the premises. *See John Church Co. v. Martinez,* 204 S.W. 486, 489 (Tex.Civ.App.—Dallas 1918, writ ref'd); *Robinson Seed & Plant Co. v. Hexter & Kramer,* 167 S.W. 749, 751 (Tex.Civ.App.—Dallas 1914, writ ref'd). Thus, a landlord currently may be subject to a mitigation requirement depending upon the landlord's actions following breach and the type of lawsuit the landlord pursues.

## III.

In discerning the policy implications of a rule requiring landlords to mitigate damages, we are informed by the rules of other jurisdictions. Forty-two states and the District of Columbia have recognized that a landlord has a duty to mitigate damages in at least some situations: when there is a breach of a residential lease, a commercial lease, or both.[1]

---

1.  *Lennon v. United States Theatre Corp.,* 920 F.2d 996, 1000 (D.C.Cir.1990) (holding that both residential and commercial landlords have duty to mitigate); Alaska Stat. § 34.03.230(c) (Michie 1990) (residential); Ariz.Rev.Stat.Ann. § 33–1370 (West 1974) (residential); *Tempe Corporate Office Bldg. v. Arizona Funding Servs.,* 167 Ariz. 394, 807 P.2d 1130, 1135 (App.1991) (commercial); *Baston v. Davis,* 229 Ark. 666, 318 S.W.2d 837, 841 (1958) (commercial); Cal.Civ Code § 1951.2(a)(2), (c)(2) (West 1985) (residential); *Sanders Constr. Co. v. San Joaquin First Fed. Sav. & Loan Ass'n,* 136 Cal.App.3d 387, 186 Cal.Rptr. 218, 226 (1982) (commercial); *Schneiker v. Gordon,* 732 P.2d 603, 611 (Colo.1987) (commer-

cial); *Danpar Assocs. v. Somersville Mills Sales Room, Inc.,* 182 Conn. 444, 438 A.2d 708, 710 (1980) (commercial); Del.Code Ann. tit. 25, § 5507 (1996) (residential), Del Code Ann. tit. 25, §§ 5101, 5507(d) (1996) (commercial); Fla.Stat. Ann. § 83.595 (West 1995) (residential); *In re PAVCO Enters., Inc.,* 172 B.R. 114, 117 (Bankr. M.D.Fla.1994) (commercial); Haw.Rev.Stat. § 521–70(d) (Supp.1975) (residential); *Marco Kona Warehouse v. Sharmilo, Inc.,* 7 Haw.App. 383, 768 P.2d 247, 251, *cert. denied,* 70 Haw. 665, 796 P.2d 501 (1989) (commercial); *Olsen v. Country Club Sports, Inc.,* 110 Idaho 789, 718 P.2d 1227, 1232–33 (App.1985) (commercial);

Only six states have explicitly held that a landlord has no duty to mitigate in any situation.[2] In South Dakota, the law is unclear.[3]

Those jurisdictions recognizing a duty to mitigate have emphasized the change in the nature of landlord-tenant law since its inception in medieval times. At English common law, the tenant had only contractual rights against the landlord and therefore could not assert common-law real property causes of

action to protect the leasehold. Over time, the courts recognized a tenant's right to bring real property causes of action, and tenants were considered to possess an estate in land. 2 R. POWELL, THE LAW OF REAL PROPERTY § 221[1], at 16–18 (1969). The landlord had to give the tenant possession of the land, and the tenant was required to pay rent in return. As covenants in leases have become more complex and the structures on

735 ILL.COMP.STAT. 5/9–213.1 (West 1992) (residential and commercial); *Nylen v. Park Doral Apartments*, 535 N.E.2d 178, 183 (Ind.Ct.App. 1989) (residential); *Sandor Dev. Co. v. Reitmeyer*, 498 N.E.2d 1020, 1023 (Ind.Ct.App.1986) (commercial); *Hirsch v. Merchants Nat'l Bank & Trust Co. of Ind.*, 166 Ind.App. 497, 336 N.E.2d 833, 836 (1975) (commercial); IOWA CODE § 562A.29(3) (1996) (residential); *Harmsen v. Dr. MacDonald's, Inc.*, 403 N.W.2d 48, 51 (Iowa.Ct. App.1987) (commercial); KAN.STAT.ANN. §§ 58–2532 to –2567 (1976)(residential); *Gordon v. Consolidated Sun Ray, Inc.*, 195 Kan. 341, 404 P.2d 949, 953–54 (1965) (commercial); KY REV. STAT.ANN. § 383.670(3) (Michie 1994) (residential); *Gray v. Kanavel*, 508 So.2d 970, 973 (La.Ct. App.1987) (residential); LA.CIV.CODE ANN. art. 2002 (West 1990) (commercial); ME REV.STAT. ANN. tit. 14, § 6010–A (West 1995) (residential and commercial); MD.CODE ANN., REAL PROP. § 8–207 (1995) (residential); *Atkinson v. Rosenthal*, 33 Mass.App.Ct. 219, 598 N.E.2d 666, 669 (1992) (commercial); *Jefferson Dev. Co. v. Heritage Cleaners*, 109 Mich.App. 606, 311 N.W.2d 426, 428 (1981) (commercial); *MRI Northwest Rentals Invs. v. Schnucks–Twenty–Five. Inc.*, 807 S.W.2d 531, 534 (Mo.Ct.App.1991) (limited duty in commercial leases); MONT.CODE ANN. § 70–24–426 (1995); *Properties Inv. Group of Mid–America v. JBA, Inc.*, 242 Neb. 439, 495 N.W.2d 624, 628–29 (1993) (commercial); NEV.REV.STAT. § 118.175 (1991) (residential); *Deasy v. Dernham Co. (In re Blondheim Modular Mfg., Inc.)*, 65 B.R. 856, 861 (Bankr.D.N.H.1986) (residential and commercial); *Sommer v. Kridel*, 74 N.J. 446, 378 A.2d 767, 768 (1977) (residential); *McGuire v. City of Jersey City*, 125 N.J. 310, 593 A.2d 309, 314 (1991) (commercial); N.M.STAT.ANN. § 47–8–6 (Michie 1978) (residential); *Isbey v. Crews*, 55 N.C.App. 47, 284 S.E.2d 534, 537 (1981) (residential); *Weinstein v. Griffin*, 241 N.C. 161, 84 S.E.2d 549, 552 (1954) (commercial); N.D.CENT. CODE § 47–16–13.4 to .5 (1993) (residential); *MAR–SON, Inc. v. Terwaho Enters.*, 259 N.W.2d 289, 291–92 (N.D.1977) (commercial); *Stern v. Taft*, 49 Ohio App.2d 405, 361 N.E.2d 279, 281 (1976) (residential); *Master Lease of Ohio, Inc. v. Andrews*, 20 Ohio App.3d 217, 485 N.E.2d 820, 823 (1984) (commercial); OKLA.STAT.ANN. tit. 41, § 129 (West 1986) (residential); *Carpenter v. Riddle*, 527 P.2d 592, 594 (Okla.1974) (limited duty in commercial leases); OR.REV.STAT. § 90.410 (1995) (residential); *United States Nat'l Bank of Oregon v. Homeland, Inc.*, 291 Or. 374, 631 P.2d

761, 765 (1981) (commercial); *In re New York City Shoes, Inc.*, 86 B.R. 420, 424 (Bankr.E.D.Pa. 1988) (commercial); R.I. GEN. LAWS § 34–18–40 (1994) (residential); *Lovell v. Kevin J. Thornton Enters., Inc. (In re Branchaud)*, 186 B.R. 337, 340 (Bankr.D.R.I.1995) (commercial); S.C.CODE ANN. § 27–40–730 (Law Co-op.1993) (residential); *United States Rubber Co. v. White Tire Co.*, 231 S.C. 84, 97 S.E.2d 403, 409 (1956) (commercial); TENN.CODE ANN. § 66–28–515 (1995) (residential); *Jaffe v. Bolton*, 817 S.W.2d 19, 26–27 (Tenn.Ct. App.1991) (commercial); *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 906 (Utah 1989) (residential and commercial); *O'Brien v. Black*, 162 Vt. 448, 648 A.2d 1374, 1376 (1994) (commercial); VA.CODE ANN. tit. 55 § 248.35 (Michie 1995) (residential); WASH.REV.CODE § 59.18.310 (1990) (residential); *Hargis v. Mel–Mad Corp.*, 46 Wash. App. 146, 730 P.2d 76, 79 (1986) (commercial); WIS. STAT. § 704.29 (1993–94) (residential); *First Wis. Trust Co. v. L. Wiemann Co.*, 93 Wis.2d 258, 286 N.W.2d 360, 366 (1980) (commercial); *System Terminal Corp. v. Cornelison*, 364 P.2d 91, 95 (Wyo.1961) (commercial). *See generally* 52 C.J.S. *Landlord and Tenant* § 498 (1968); 21 AM.JUR. 3d *Damages—Mitigation by Landlord* §§ 1–9 (1968 & Supp.1994); 5 A. CORBIN, CORBIN ON CONTRACTS § 1039A (Supp.1993).

2. *Ryals v. Laney*, 338 So.2d 413, 415 (Ala.Civ. App.1976) (holding that there is no duty to mitigate in residential leases); *Crestline Ctr. v. Hinton*, 567 So.2d 393, 396 (Ala.Civ.App.1990) (commercial); *Love v. McDevitt*, 114 Ga.App. 734, 152 S.E.2d 705, 706 (1966) (residential); *Lamb v. Decatur Fed. Sav. & Loan Ass'n*, 201 Ga.App. 583, 411 S.E.2d 527, 530 (1991) (commercial); *Markoe v. Naiditch & Sons*, 303 Minn. 6, 226 N.W.2d 289, 291 (1975) (residential and commercial); *Alsup v. Banks*, 68 Miss. 664, 9 So. 895, 895 (1891) (residential); *Duda v. Thompson*, 169 Misc.2d 649, 647 N.Y.S.2d 401, 403–04 (N.Y.Sup.Ct.1996) (residential); *Holy Properties, Ltd. v. Kenneth Cole Prods., Inc.*, 87 N.Y.2d 130, 637 N.Y.S.2d 964, 661 N.E.2d 694, 696 (1995) (commercial); *Arbenz v. Exley, Watkins & Co.*, 52 W.Va. 476, 44 S.E. 149, 151 (1903) (commercial). Mississippi has reported no cases regarding a commercial landlord's duty to mitigate, and West Virginia has reported no cases regarding a residential landlord's duty to mitigate.

3. South Dakota has apparently reported no cases on this issue.

the land have become more important to the parties than the land itself, courts have begun to recognize that a lease possesses elements of both a contract and a conveyance. *See, e.g., Schneiker v. Gordon,* 732 P.2d 603, 607–09 (Colo.1987); *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 902, 904 (Utah 1989). Under contract principles, the lease is not a complete conveyance to the tenant for a specified term such that the landlord's duties are fulfilled upon deliverance of the property to the tenant. Rather, a promise to pay in a lease is essentially the same as a promise to pay in any other contract, and a breach of that promise does not necessarily end the landlord's ongoing duties. *Schneiker,* 732 P.2d at 610; *Wright v. Baumann,* 239 Or. 410, 398 P.2d 119, 121 (1965). Because of the contractual elements of the modern lease agreement, these courts have imposed upon the landlord the contractual duty to mitigate damages upon the tenant's breach.

Public policy offers further justification for the duty to mitigate. First, requiring mitigation in the landlord-tenant context discourages economic waste and encourages productive use of the property. As the Colorado Supreme Court has written:

> Under traditional property law principles a landlord could allow the property to remain unoccupied while still holding the abandoning tenant liable for rent. This encourages ·both economic and physical waste. In no other context of which we are aware is an injured party permitted to sit idly by and suffer avoidable economic loss and thereafter to visit the full adverse economic consequences upon the party whose breach initiated the chain of events causing the loss.

*Schneiker,* 732 P.2d at 610. A mitigation requirement thus returns the property to productive use rather than allowing it to remain idle. Public policy requires that the law "discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts." *Wright,* 398 P.2d at 121 (quoting C. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES, § 33 (1935)).

Second, a mitigation rule helps prevent destruction of or damage to the leased property. If the landlord is encouraged to let the property remain unoccupied, "the possibility of physical damage to the property through accident or vandalism is increased." *Schneiker,* 732 P.2d at 610.

Third, the mitigation rule is consistent with the trend disfavoring contract penalties. *Reid,* 776 P.2d at 905–06. Courts have held that a liquidated damages clause in a contract must represent a reasonable estimate of anticipated damages upon breach. *See, e.g., Warner v. Rasmussen,* 704 P.2d 559, 561, 563 (Utah 1985). "Similarly, allowing a landlord to leave property idle when it could be profitably leased and forc[ing] an absent tenant to pay rent for that idled property permits the landlord to recover more damages than it may reasonably require to be compensated for the tenant's breach. This is analogous to imposing a disfavored penalty upon the tenant." *Reid,* 776 P.2d at 905–06.

Finally, the traditional justifications for the common law rule have proven unsound in practice. Proponents of the no-mitigation rule suggest that the landlord-tenant relationship is personal in nature, and that the landlord therefore should not be forced to lease to an unwanted tenant. *See Wohl v. Yelen,* 22 Ill.App.2d 455, 161 N.E.2d 339, 343 (1959). Modern lease arrangements, however, are rarely personal in nature and are usually business arrangements between strangers. Edwin Smith, Jr., Comment, *Extending the Contractual Duty to Mitigate Damages to Landlords when a Tenant Abandons the Lease,* 42 BAYLOR L.REV. 553, 559 (1990). Further, the landlord's duty to make reasonable efforts to mitigate does not require that the landlord accept replacement tenants who are financial risks or whose business was precluded by the original lease. Note, *Landlord and Tenant—Mitigation of Damages,* 45 Wash.L.Rev. 218, 225 (1970).

The overwhelming trend among jurisdictions in the United States has thus been toward requiring a landlord to mitigate damages when a tenant abandons the property in breach of the lease agreement. Those courts adopting a mitigation requirement have emphasized the contractual elements of a lease agreement, the public policy favoring productive use of property, and the practicalities of

the modern landlord-tenant arrangement as supporting such a duty.

## IV.

We are persuaded by the reasoning of those courts that recognize that landlords must mitigate damages upon a tenant's abandonment and failure to pay rent. This Court has recognized the dual nature of a lease as both a conveyance and a contract. *See Davidow v. Inwood North Prof'l Group—Phase I,* 747 S.W.2d 373, 375–76 (Tex.1988); *Kamarath v. Bennett,* 568 S.W.2d 658, 660–61 (Tex. 1978). Under a contract view, a landlord should be treated no differently than any other aggrieved party to a contract. Further, the public policy of the state of Texas calls for productive use of property as opposed to avoidable economic waste. *Brown,* 766 S.W.2d at 204 (Kilgarlin, J., concurring). As Professor McCormick wrote over seventy years ago, the law

> which permits the landlord to stand idly by the vacant, abandoned premises and treat them as the property of the tenant and recover full rent, [should] yield to the more realistic notions of social advantage which in other fields of the law have forbidden a recovery for damages which the plaintiff by reasonable efforts could have avoided.

Charles McCormick, *The Rights of the Landlord Upon Abandonment of the Premises by the Tenant,* 23 Mich.L.Rev. 211, 221–22 (1925). Finally, we have recognized that contract penalties are disfavored in Texas. *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484, 486 (1952) (landlord should not receive more or less than actual damages upon tenant's breach). A landlord should not be allowed to collect rent from an abandoning tenant when the landlord can, by reasonable efforts, relet the premises and avoid incurring some damages. We therefore recognize that a landlord has a duty to make reasonable efforts to mitigate damages when the tenant breaches the lease and abandons the property, unless the commercial landlord and tenant contract otherwise.

## V.

To ensure the uniform application of this duty by the courts of this state, and to guide future landlords and tenants in conforming their conduct to the law, we now consider several practical considerations that will undoubtedly arise. We first consider the level of conduct by a landlord that will satisfy the duty to mitigate. The landlord's mitigation duty has been variously stated in other jurisdictions. *See, e.g., Reid,* 776 P.2d at 906 ("objective commercial reasonableness"); *Schneiker,* 732 P.2d at 611 ("reasonable efforts"); Cal. Civ.Code § 1951.2(c)(2) ("reasonably and in a good-faith effort"). Likewise, the courts of this state have developed differing language regarding a party's duty to mitigate in other contexts. *See City of San Antonio v. Guidry,* 801 S.W.2d 142, 151 (Tex.App.—San Antonio 1990, no writ) (collecting cases). We hold that the landlord's duty to mitigate requires the landlord to use objectively reasonable efforts to fill the premises when the tenant vacates in breach of the lease.

We stress that this is not an absolute duty. The landlord is not required to simply fill the premises with any willing tenant; the replacement tenant must be suitable under the circumstances. Nor does the landlord's failure to mitigate give rise to a cause of action by the tenant. Rather, the landlord's failure to use reasonable efforts to mitigate damages bars the landlord's recovery against the breaching tenant only to the extent that damages reasonably could have been avoided. Similarly, the amount of damages that the landlord actually avoided by releasing the premises will reduce the landlord's recovery.

Further, we believe that the tenant properly bears the burden of proof to demonstrate that the landlord has mitigated or failed to mitigate damages and the amount by which the landlord reduced or could have reduced its damages. The traditional rule in other contexts is that the breaching party must show that the nonbreaching party could have reduced its damages. *See, e.g., Sorbus, Inc. v. UHW Corp.,* 855 S.W.2d 771, 775 (Tex.App.—El Paso 1993, writ denied) (mitigation of damages following tortious interference with contract); *Texas Dep't of Human Servs. v. Green,* 855 S.W.2d 136, 151 (Tex. App.—Austin 1993, writ denied) (mitigation

of damages following wrongful discharge); *see generally* E. ALLEN FARNSWORTH, CONTRACTS § 12.12 (2d ed. 1990). In the landlord-tenant context, although there is some split of authority, many other jurisdictions have placed the burden of proving mitigation or failure to mitigate upon the breaching tenant. *See* Barker, 20 J. Corp. L. at 639 n. 86.

■■ When the tenant contends that the landlord has actually mitigated damages, the breaching tenant need not plead the landlord's actual mitigation as an affirmative defense. Rather, the tenant's evidence of the landlord's mitigation tends to rebut the measure of damages under the landlord's claim of breach and may be admitted under a general denial. *See Greater Fort Worth & Tarrant County Community Action Agency v. Mims*, 627 S.W.2d 149, 151 (Tex.1982). The tenant's contention that the landlord failed to mitigate damages, in contrast, is similar to an avoidance defense; evidence of failure to mitigate is admissible only if the tenant pleads the failure to mitigate as an affirmative defense. *W.L. Moody & Co. v. Rowland*, 100 Tex. 363, 99 S.W. 1112, 1114–16 (1907); *see also Professional Servs., Inc. v. Amaitis*, 592 S.W.2d 396, 397 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

The final issue to resolve regarding the duty to mitigate is to which types of actions by the landlord the duty will apply. Traditionally, Texas courts have regarded the landlord as having four causes of action against a tenant for breach of the lease and abandonment. *See Speedee Mart v. Stovall*, 664 S.W.2d 174, 177 (Tex.App.—Amarillo 1983, no writ); Jerry D. Johnson, *Landlord Remedies in Texas: Confusion Reigns Where Certainty Should Prevail*, 33 S. Tex. L.Rev. 417, 419–20 (1992). First, the landlord can maintain the lease, suing for rent as it becomes due. Second, the landlord can treat the breach as an anticipatory repudiation, repossess, and sue for the present value of future rentals reduced by the reasonable cash market value of the property for the remainder of the lease term. Third, the landlord can treat the breach as anticipatory, repossess, release the property, and sue the tenant for the difference between the contractual rent and the amount received from the new tenant. Fourth, the landlord can declare the lease forfeited (if the lease so provides) and relieve the tenant of liability for future rent. *Speedee Mart*, 664 S.W.2d at 177.

■ The landlord must have a duty to mitigate when suing for anticipatory repudiation. Because the cause of action is contractual in nature, the contractual duty to mitigate should apply. The landlord's option to maintain the lease and sue for rent as it becomes due, however, is more troubling. To require the landlord to mitigate in that instance would force the landlord to reenter the premises and thereby risk terminating the lease or accepting the tenant's surrender. *See* Johnson, 33 S. Tex.L.Rev. at 437; Hicks, 24 Baylor L.Rev. at 517. We thus hold that, when exercising the option to maintain the lease in effect and sue for rent as it becomes due following the tenant's breach and abandonment, the landlord has a duty to mitigate only if (1) the landlord actually reenters, or (2) the lease allows the landlord to reenter the premises without accepting surrender, forfeiting the lease, or being construed as evicting the tenant. *See Robinson Seed & Plant Co. v. Hexter & Kramer*, 167 S.W. 749, 751 (Tex.Civ.App.—Dallas 1914, writ ref'd); 21 A.L.R.3d at 556–63. A suit for anticipatory repudiation, an actual reentry, or a contractual right of reentry subject to the above conditions will therefore give rise to the landlord's duty to mitigate damages upon the tenant's breach and abandonment.

## VI.

In their first amended answer, Hill Country and Barbara Hill specifically contended that the Palisades failed to mitigate its damages. Because the court of appeals upheld the trial court's refusal to submit their mitigation instruction, we reverse the judgment of the court of appeals and remand for a new trial.