

# NUMBER 13-08-173-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**MOB 90 OF TEXAS, L.P.,**          **Appellant,**

**v.**

**NEJEMIE ALTER, M.D., P.A. AND
NEJEMIE ALTER, M.D.,**          **Appellees.**

### On appeal from the 148th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Vela

MOB 90 of Texas, L.P. ("MOB") appeals a judgment of the trial court awarding it

$36,782.69 against Nejemie Alter, M.D., P.A and Nejemie Alter, M.D. ("Alter") in a landlord

tenant dispute. By five issues, MOB complains that it was entitled to rent owed under the

lease through January 2008. MOB also challenges the sufficiency of the evidence supporting the trial court's determination not to award MOB additional amounts of unpaid rent because it had not taken proper steps to mitigate its damages after Alter defaulted on the lease. We reverse and, as modified, render judgment.

## I. BACKGROUND

On September 14, 2005, MOB entered into a five-year lease with Alter to rent space to be used as Alter's medical office. Alter personally guaranteed the obligation. From March 2006 through December 2006, Alter did not pay the rent. MOB filed a forcible entry and detainer action against Alter. Thereafter, the parties entered into a Rule 11 agreement wherein MOB agreed to delay enforcement of the writ of possession for three weeks in exchange for three weekly payments of $1,000.00, which Alter paid. *See* TEX. R. CIV. P. 11. Alter made two additional payments that were applied to reduce the past balance.

Only damages owed to MOB were in dispute at the bench trial. MOB sought recovery of all rents through January 2008. Alter argued that he should owe rent only until January 2, 2007, when he left the premises. According to Alter, MOB did not properly mitigate its damages because it did not take proper action in order to re-lease the property.

Alter testified that his monthly rent on the leased property was $4,677.17. He agreed that he owed rent through January 2, 2007. The amount owed up to that time was $36,782.69. In support of his argument that he did not owe rent after January 2, 2007, Alter testified that he passed by the MOB property often and saw no signage indicating that the property was for lease. He stated that he was unaware of any newspaper advertisements regarding leasing the premises. To his knowledge, there was no visible effort on MOB's part to lease the premises. Alter testified that he unsuccessfully tried to

2

negotiate with MOB for less space and would have been willing to pay weekly amounts to continue leasing the premises. He testified that he currently was renting new space as well as a storage facility and had paid a total of $36,690.81 to his new landlord and the storage facility. Alter noted that he would have been willing to pay that amount toward the leased premises that he entered into pursuant to his lease with MOB. The evidence is undisputed, however, that he did not.

Counsel for Alter called Jean Shivers, MOB's property manager, as a witness. Shivers testified that it was not typical for signs to be hung advertising the availability of space for lease in these types of commercial leases. Shivers stated that she showed the space three times to potential lessees after Alter had been evicted. She said that she had not leased Alter's space or any other space in the building since January 2007. Shivers listed Alter's space with a service called Loopnet, one of the predominant ways to obtain commercial tenants. She also testified that she listed the property on Costar, a similar website. Shivers also worked with a hospital administrator in an attempt to lease the premises. Alter had originally learned of the property in question through hospital contacts.

On further examination, Shivers stated that she did not think it would "hurt" to put up signs advertising the property. Shivers testified that she was not aware that the Nueces County Medical Society had a journal in which she could have advertised. Finally, Shivers testified that it was not uncommon for it to take extended periods of time to re-lease commercial premises.

The trial court found that Alter owed MOB $36,782.69 through January 2, 2007, which is not contested in this appeal. The court stated that MOB was not entitled to any further damages because the trial court believed the evidence presented did not rise to the

3

level required to meet MOB's duty to mitigate.

MOB raises five issues on appeal. Primarily, MOB's issues concern the sufficiency and "quality" of the evidence heard by the trial court with respect to mitigation. For instance, MOB disputes the testimony of Alter because he had no experience as a commercial landlord. MOB argues that Alter's evidence failed to explain what efforts a reasonable commercial landlord should have engaged in to release the property. In fact, MOB points out that the evidence showed that Alter, himself, was referred to the leased premises by the hospital. MOB also argues that because Alter had the burden of proof to show the amount by which MOB's damages increased because of its failure to mitigate, there was no evidence to support the trial court's implied finding that the entire amount of rent that accrued could have been avoided.

## II. STANDARD OF REVIEW

When no findings of fact or conclusions of law are filed, an appellate court implies all necessary findings in support of the trial court's judgment. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex. 1992). However, when a reporter's record is included in the record on appeal, the implied findings may be challenged for legal and factual sufficiency. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex. 1989) (per curiam). In a legal sufficiency review, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex. 2005).

4

In reviewing factual sufficiency of the evidence, we must consider and weigh all the evidence and we should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We may not substitute our own judgment for that of the trier of fact, even if we would have reached a different result on the evidence. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex. 1998).

### III. APPLICABLE LAW

A landlord has a duty to make reasonable efforts to mitigate damages when the tenant breaches a lease and abandons the property. TEX. PROP. CODE ANN. § 91.006 (Vernon 2007). The landlord's duty to mitigate requires the landlord to use objectively reasonable efforts to fill the premises when the tenant vacates after breaching the lease. *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc*., 948 S.W.2d 293, 299 (Tex. 1997). It is not an absolute duty. *Id.* A landlord is not required to make all known efforts or accept an unsuitable tenant. *Id*. The landlord's failure to use reasonable efforts to mitigate bars the landlord's recovery against the breaching tenant only to the extent that damages reasonably could have been avoided. *Id.*

The tenant bears the burden of proof to demonstrate the landlord has failed to mitigate and the amount by which the landlord could have reduced its damages if it had mitigated. *Id*. A tenant's proof that the landlord failed to use objectively reasonable efforts to fill the premises, standing alone, does not bar recovery. *Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 688 (Tex. App.–Houston[14th Dist.] 2005, no pet.). The tenant must also prove the amount that the damages were increased by the landlord's failure to

5

mitigate. *Id.* Thus, when a tenant proves the landlord's failure to mitigate, but the tenant does not prove the amount of damages that could have been avoided, the tenant is not entitled to any reduction in damages. *Id.* Even a landlord who makes no effort to mitigate is entitled to damages for a reasonable amount of time needed to find a new tenant and the expenses involved in reasonable mitigation efforts. *Id.*

## IV. ANALYSIS

Here, Alter's evidence was basically that he had not seen any signs advertising the premises. Shivers, however, testified to her efforts. She testified that Loopnet is targeted toward persons interested in commercial property and was one of the predominant ways to obtain tenants. Shivers stated that she kept in close contact with personnel from Doctor's' Regional Hospital about office space. She claimed that she "made every effort that's normally made." Regardless, the trial court opined at the hearing that it believed that MOB should have worked more with Alter as a source of mitigation, stating:

> While there is some evidence presented to the Court regarding the efforts of the Plaintiff herein to mitigate damages, I don't find that those rise to the level—to such a level that would meet your duty of mitigated damages. I heard of a tenant that aggressively tried to work with the lessor any and all of his efforts and proposals were rejected, that the property remains unleased . . . .

In other words, the trial court found that MOB's efforts in mitigating its damages failed because MOB chose not to work with Alter, who had already defaulted on the lease.

Alter cites no authority for the proposition that MOB would be required under Texas law to work with a breaching tenant to mitigate damages, and we find none. Rather, the supreme court has held that a landlord is not required to allow any willing tenant to lease the premises; the tenant must be a suitable one under the circumstances. *Austin Hill*

6

*Country Realty, Inc.*, 948 S.W.2d at 299. The policy underlying mitigation is to avoid waste and encourage the party to exercise diligence, not to penalize the mitigating party for not doing enough. *Id*. at 298-99.

Here, Alter introduced evidence that the trial court implicitly concluded was little more than an attempt by MOB to advertise with an online broker and keep up with the administrators of Doctor's Hospital. It was Alter's burden, however, to show that these methods were unreasonable under the circumstances. The trial court found that they were. Alter also testified that he believed he should have been allowed to stay on the premises and MOB should have offered him less space as part of its duty to mitigate.

The trial court clearly indicated that it found MOB's actions unreasonable because MOB had a willing tenant, Alter. We need not decide, however, if the trial court was correct in that regard because Alter failed to produce evidence of the amount that damages would have been reduced had MOB mitigated under the circumstances presented here. A tenant's proof that the landlord failed to use objectively reasonable efforts to fill the premises, standing alone is not a bar to the landlord's recovery. *Gowing*, 228 SW.3d at 688. Even assuming that the evidence supported the trial court's implied finding that MOB's efforts at mitigation were not reasonable, Alter introduced no evidence to prove the amount of damages that could have been avoided if MOB had mitigated. Alter's burden also required him to prove how much the damages would have been decreased if MOB had properly mitigated.

Where a tenant proves failure to mitigate, but not the amount of damages, the tenant is not entitled to any reduction in damages. *Id.* Here, the trial court deducted from MOB's damages the full contract lease amount. This was not supported by the evidence.

7

Alter offered no evidence that the full amount of damages could have been avoided. The only testimony offered by Alter was that he had obtained storage space and had entered into another lease elsewhere. This evidence does not support the trial court's implied finding that the full contract amount was the amount by which MOB could have reduced its damages had it properly mitigated its damages. We sustain MOB's fifth issue and hold that the trial court erred in decreasing MOB's recovery based on a failure to mitigate damages because Alter produced no evidence of the amount by which MOB could have reduced its damages by mitigation.[1] MOB introduced evidence that the amount Alter owed was $93,220.57 through January 2008. Because Alter did not prove any amount by which this amount should be reduced for failure to mitigate, we reverse the trial court's judgment, modify and render judgment for MOB for $93,220.57.

## V. CONCLUSION

The judgment of the trial court is reversed and, as modified, rendered.


ROSE VELA
Justice


Memorandum Opinion delivered and
filed this 16th day of April, 2009.

---

[1]We do not address appellant's other issues as they are not necessary to the disposition of this appeal. TEX. R. APP. P. 47.1.

8