**Affirmed in Part, Reversed and Rendered in Part, and Memorandum Opinion filed February 10, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00986-CV

**INLAND AMERICAN RETAIL MANAGEMENT LLC, A DELWARE CORPORATION AS MANAGING AGENT FOR MB TOMBALL TOWN CENTER LIMITED PARTNERSHIP AND INLAND AMERICAN RETAIL MANAGEMENT LLC, A DELAWARE CORPORATION AS MANAGING AGENT FOR MB SPRING TOWN CENTER LIMITED PARTERSHIP,** Appellants

**V.**

**PAUL FRIEDMAN, Appellee**

On Appeal from County Civil Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 919141

## M E M O R A N D U M   O P I N I O N

Two landlords challenge a final judgment arising from breaches of lease obligations to pay rent for restaurant space at shopping centers in Spring and

Tomball, Texas. The appeal is brought by Inland American Retail Management LLC, a Delaware corporation, as managing agent for (1) MB Spring Town Center Limited Partnership; and (2) MB Tomball Town Center Limited Partnership. We refer to the landlord appellants collectively as "Inland American."

The trial court signed a final judgment awarding damages for unpaid rent in favor of Inland American and against two corporate tenants that operated pizza parlors in the leased premises. The trial court's final judgment ordered that Inland American take nothing as to Paul Friedman, who signed guaranty agreements in connection with the lease obligations at issue. Inland American challenges the final judgment insofar as it denies recovery for unpaid rent against Friedman individually as guarantor of the lease obligations.

We reverse the trial court's judgment in part and render judgment in favor of Inland American with respect to Friedman individually. We affirm the trial court's judgment in all other respects.

## BACKGROUND

Friedman signed a 10-year lease on March 23, 2004, as "Owner" of Abundant Caterers Inc. d/b/a Paul's Pizza Shop #3. The lease identified Abundant Caterers as the "tenant" occupying 3,320 square feet in the Spring Town Center shopping center. The "landlord" was identified as A-K-S 57 NEC FM 2920-Kuykendahl, L.P.; the successor in interest to this entity is Inland American.

On the same day, Friedman signed a guaranty agreement as "Guarantor" and bound himself to "pay to Landlord . . . all rental obligations and all other sums of money to be paid by Tenant and its full performance . . ." under Abundant Caterers's lease for space at Spring Town Center. Paragraph 1 of the Guaranty states: "[T]he Undersigned hereby expressly waives notice of non-payment,

2

protest and notice of protest with respect to any indebtedness covered hereby."

Abundant Caterers Inc. d/b/a Paul's Pizza Shop #4 entered into a second lease on March 23, 2004, as the "tenant" occupying 3,262 square feet in the Tomball Town Center shopping center. The "landlord" was identified as A-S 62 Hwy 249-FM 2920, L.P.; the successor in interest to this entity is Inland American.

Ron Brewer, who was Inland American's retail property manager, testified that Friedman signed a guaranty that "personally obligates him for the obligations of the lease agreement" governing Abundant Caterers's location at the Tomball Town Center site. Brewer testified that Friedman's guaranty for the Spring Town Center site was the "[s]ame personal guaranty" as Friedman's guaranty for the Tomball Town Center site.

On March 27, 2006, Abundant Caterers assigned its rights and obligations under the leases for the Spring Town Center and Tomball Town Center locations to Whistling Ducks Inc. Bruce Raley, the "president" of Whistling Ducks, personally guaranteed the obligations under these leases. Inland American consented to the assignments.

The assignments to Whistling Ducks did not release Friedman as guarantor of the Abundant Caterers lease obligations to Inland American. The assignment contract contains a provision entitled, "Assignor and Guarantor Not Released." This provision states: "This Assignment and Amendment shall not release Assignor or Guarantor from liability for the performance by Assignor of the Tenant Obligations, including without limitation, the payment of all rent . . . ." It continues: "[T]he liability of Assignor and Guarantor for the performance by Assignor of the Tenant Obligations shall continue as if this Assignment and Amendment had not been made." Friedman testified that he knew he was going to be held responsible if Whistling Ducks and Raley defaulted.

3

Whistling Ducks failed to pay monthly rent for the two locations in February 2008. At some point between February and May 2008, Whistling Ducks and Raley vacated both locations and removed the equipment. Inland American sent letters to Abundant Caterers and Friedman in early May 2008 demanding payment of unpaid rent on the two leases. Inland American filed suit in late May 2008 against Abundant Caterers, Friedman, Whistling Ducks, and Raley seeking unpaid rent and attorney's fees.

Inland American eventually secured another tenant for the Spring Town Center location and signed a new lease. Inland American did not secure another tenant for the Tomball Town Center location.

Abundant Caterers filed a cross action against Raley and Whistling Ducks. Raley filed for bankruptcy protection and was dismissed from the lawsuit. According to a recitation in the trial court's final judgment, Abundant Caterers and Whistling Ducks confessed judgment for the full amount of unpaid rent due to Inland American.

A jury trial was conducted in September 2011 as to Friedman's individual liability under the guaranty agreements for the unpaid Abundant Caterers rent obligations. Inland American's Ron Brewer testified at trial without contradiction that $338,970 was owed for unpaid rent under the Abundant Caterers lease on the Tomball Town Center location, and $181,333.53 was owed for unpaid rent under the Abundant Caterers lease on the Spring Town Center location. The trial court submitted two questions in the jury charge.

Question No. 1 asked, "Do you find that by failing to disclose or to act, *Inland American Retail Management* is estopped from enforcing the guaranties of payment of *Paul Friedman*?" Question No. 1 stated, "You are instructed that the term 'estoppel' is defined to include silence or inaction on the part of a party, if

that party is under a duty to speak or act and by his silence or inaction misled the opposing party to his detriment." The jury answered, "Yes."

Question No. 2 asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate *Inland American Retail Management* for *their* damages, if any, that resulted from Paul Friedman's failure to comply with the terms of the guaranty?" Question No. 2 stated, "Do not include in your answer any amount that you find *Inland American Retail Management* could have avoided by the exercise of reasonable care." The jury awarded $201,000 in response to Question 2.

The parties filed a series of post-trial motions.[1] The trial court signed a final judgment on August 6, 2013, under which Abundant Caterers and Whistling Ducks are jointly and severally liable to Inland American for (1) $338,970 in unpaid rent on the Tomball location; (2) $181,333.53 in unpaid rent on the Spring location; and (3) attorney's fees. The final judgment orders that Inland American shall take nothing as to Friedman individually.

Inland American timely filed a notice of appeal on October 31, 2013, which challenged the final judgment "as to Defendant Paul Friedman only."[2]

---

[1] The judge who presided over the trial resigned from the bench before ruling on the parties' post-trial motions and signing a final judgment. The Hon. Teresa Chang was appointed in 2012 and signed a "Judgment" on December 11, 2012, but subsequently determined that the "Judgment" was interlocutory because it failed to address all claims and parties. The trial court signed an appealable "Final Judgment" on August 6, 2013, which addresses all parties and claims. Inland American filed the following post-trial motions: (1) "Plaintiffs' Motion for Judgment Notwithstanding the Verdict[,] Motion to Disregard Jury Findings[,] and Alternative Motion for Judgment," filed on September 26, 2011; (2) "Plaintiffs' Motion to Set Aside 'Judgment' and for New Trial," filed on January 9, 2013; (3) "Plaintiffs' Second Motion to Set Aside 'Judgment' and for New Trial," filed on May 14, 2013; (4) "Request for Findings of Fact and Conclusions of Law," filed on August 7, 2013; and (5) "Plaintiffs' Post-Judgment Motion for New Trial," filed on September 4, 2013. At a hearing on entry of judgment held on August 6, 2013, the trial court stated that "Inland American's Second Motion to Set Aside Judgment and for New Trial is denied. The Court grants Friedman's Motion for Entry of Judgment and renders judgment in accordance with the jury verdict."

[2] Inland American's notice of appeal was timely because it was filed within 90 days of the

5

Inland American challenges the trial court's judgment as to Friedman on grounds that there was no evidence to support (1) "the submission or jury answer to Question No. 1" addressing estoppel; and (2) "the jury's reduction of the undisputed rental damages amount proved at trial" in response to Question No. 2 submitting failure to mitigate. Inland American preserved these challenges in the trial court by raising them in its charge objections, which the trial court expressly overruled. *See* Tex. R. App. P. 33.1(a); *Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991).[3]

Inland American challenges the legal sufficiency of evidence addressing affirmative defenses on which Friedman bore the burden of proof. *See* Tex. R. Civ. P. 94 (estoppel is an affirmative defense); *see also Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299-300 (Tex. 1997) ("[W]e believe that the tenant properly bears the burden of proof to demonstrate that the landlord has mitigated or failed to mitigate damages and the amount by which the landlord reduced or could have reduced its damages. . . . [E]vidence of failure to mitigate is admissible only if the tenant pleads the failure to mitigate as an affirmative defense."). Friedman pleaded estoppel and failure to mitigate as affirmative defenses in Defendant's Third Amended Original Answer.

## I. Standard of Review

In conducting a legal sufficiency review, we examine the evidence in the light most favorable to the jury verdict and indulge every reasonable inference that

---

"Final Judgment" signed on August 6, 2013. *See* Tex. R. Civ. P. 329b(a), (b); Tex. R. App. P. 26.1(a)(1). Whistling Ducks and Abundant Caterers did not pursue an appeal or cross-appeal challenging the adverse judgment awarding damages jointly and severally against them for unpaid rent due to Inland American.

[3] Inland American raises several additional issues on appeal, which we need not address given our disposition of the no evidence challenges to the jury answers to Question No. 1 and Question No. 2.

would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. "[L]egal-sufficiency review must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* "[T]he traditional scope of review does not disregard contrary evidence if there is no favorable evidence . . . or if contrary evidence renders supporting evidence incompetent . . . or conclusively establishes the opposite . . . ." *Id.* at 810.

We measure sufficiency of the evidence against the jury charge as given when – as in this case – there is no objection to the substance of the law as set forth in the charge. *See, e.g., St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2003) (citing *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000)).

## II.     Circumstances Giving Rise to a Duty to Disclose Non-Payment

Inland American contends that no evidence in this record demonstrates circumstances giving rise to a duty to notify Friedman of the default committed by Whistling Ducks and Raley. Friedman argues that sufficient evidence supports the jury's "Yes" answer to Question No. 1, which asked if Inland American was estopped to enforce his lease payment guaranties, because Friedman "was not in possession of the leasehold."

Question No. 1 instructed the jury that estoppel "is defined to include silence or inaction on the part of a party, if that party is under a duty to speak or act and by his silence or inaction misled the opposing party to his detriment." Friedman contends on appeal that "Inland was silent of [sic] the default by not advising Mr. Friedman and, to his detriment, Mr. Friedman relied on Inland's silence. Therefore, Inland should be estopped from enforcing any guaranty signed by Mr.

7

Friedman." He further contends that "Inland should be estopped because Inland knew, or should have known, that Mr. Friedman had no knowledge of the missed rental payments and default."

According to Friedman, "Inland should have notified Mr. Friedman that Mr. Raley was not making rental payments and that Mr. Raley had vacated the premises." Had Inland American done so, Mr. Friedman contends he could have stepped in to make the missed payments and taken other steps to address the situation. Other than the claimed obligation on Inland American's part to notify him sooner of the assignee's defaulted lease payments, Friedman does not identify any other "duty to speak or act" that Inland American failed to satisfy.

It is uncontroverted that Friedman signed a guaranty agreement concerning the Spring Town Center lease under which he "waives diligence on the part of Landlord in the collection of said indebtedness, and agrees that Landlord shall be under no obligation to notify the Undersigned of acceptance hereof or any amendments, changes, extensions and or rearrangements of the Lease Agreement . . . all without the necessity of notice to or consent from the Undersigned, the same being expressly waived." The guaranty agreement further states: "Additionally, the Undersigned hereby expressly waives notice of non-payment, protest and notice of protest with respect to any indebtedness covered hereby." It also is uncontroverted that Friedman provided the same guaranty with respect to the Tomball Town Center lease.

During his testimony, Brewer agreed with an assertion by Friedman's counsel that Raley "was in default five months before your company told Mr. Friedman about it." Friedman testified at trial that Inland American did not provide notice to him regarding the failure of Whistling Ducks and Raley to pay rent beginning in February 2008; Friedman said he did not know about the default

8

and did not receive notice of it until Inland American sent a letter to him in May 2008. According to Friedman, he was "absolutely stunned" by the May 2008 notice and "went to see the locations. There was nothing in the locations. Everything was removed."

Friedman answered "Yes" to a question asking: "At the time of the assignment when you were no longer going to be personally writing the checks to Inland, did you believe that you would be notified if there was a problem?" Friedman answered "Yes" to another question asking: "And did you make sure that Inland always had your current contract information and address with which to notify you?" During redirect examination, Friedman was asked: "[W]ould you have thought in a million years that it would take them five months to notify you?" Friedman answered: "Absolutely not."

During cross-examination, Friedman was asked: "Did you set it up in any document that Inland should notify you each and every month if or when he did pay it or didn't pay it?" Friedman answered: "There's no document saying that, no." A follow-up question asked: "And doesn't the assignment say that Inland can proceed against you, it can proceed against Mr. Raley — it was set up for the very thing you're complaining about today, is the fact that you weren't notified when you signed a piece of paper telling Inland you didn't need to notify me?" Friedman answered: "Well, look, yes, but you approved them too." A further question asked: "Now — you mean, the landlord approved them too?" Friedman responded: "Yes, the landlord." Another question asked: ". . . [N]ow we're here three years later and you're complaining about the same thing you agreed in writing would not be a complaint, aren't you?" Friedman answered: "Well, I would have never thought in a hundred years that he would default on his payments."

During further cross-examination, Friedman was asked: "And Inland said to you in a document, which you signed — in fact, you said, I agree Inland you don't have to notify me. You could have gotten off the lease. You could have done all these things, but no you agreed to that, did you not?" Friedman answered: "I did —." A follow-up question asked: "You're not trying to change the agreement now, are you?" Friedman answered: "No, I'm not trying to change the agreement."

At most, this record contains evidence that (1) Friedman as guarantor of the tenants' lease obligations expressly waived notice in arm's length transactions with the landlords; and (2) for some number of months, Inland American did not provide the notice of non-payment that Friedman expressly agreed it did not have to provide. There is no evidence on this record of circumstances giving rise to a duty on Inland American's part to notify Friedman of the default by Whistling Ducks and Raley in contravention of the express guaranty terms, or to notify Friedman of the default before May 2008. Friedman points to no evidence giving rise to a fiduciary or confidential relationship between Friedman and Inland American.

The record does not support Friedman's contention that Inland American failed to address waiver of notice during trial. As discussed above, Friedman testified repeatedly during cross-examination regarding the agreed waiver of notice of non-payment. Inland American's counsel discussed the agreed waiver of notice of non-payment at length during closing argument. He stated: ". . . [T]he document says what it says and it's in clear language, not even very legal language." He continued: "And you'll be able to read it and it says we don't have to notify you and we can go against you . . . ."

We also conclude that Friedman misplaces his reliance on *Champlin Oil &*

10

*Refining Co. v. Chastain*, 403 S.W.2d 376 (Tex. 1965), and *Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.*, 817 S.W.2d 160 (Tex. App.—Houston [14th Dist.] 1991, no writ). Friedman cites these cases to bolster his contention that "[e]quitable [e]stoppel was supported by the evidence and pleadings." He relies on them to argue that equitable estoppel applies because Inland "(1) . . . was silent when it should have told . . . Friedman that . . . Raley's sublease was in default; (2) . . . knew that . . . Raley had not made rental payments; and (3) . . . should have known . . . by its silence or inaction [that Friedman] . . . would not know to step in and make the rent payments . . . ."

The parties argue at some length on appeal about whether the affirmative defense submitted in Question No. 1 is more properly characterized as "equitable estoppel" or "estoppel by silence." Question No. 1, which defines "estoppel" to encompass "silence or inaction . . . if that party is under a duty to speak or act," does not track the elements of equitable estoppel set forth in Texas Pattern Jury Charge 101.25 and discussed in *Steubner Realty 19*, 817 S.W.2d at 162. In contrast to Question No. 1, the equitable estoppel formulation in PJC 101.25 is framed in terms of whether the plaintiff "by words or conduct made a false representation or concealed material facts . . . ." *See generally Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952).

Question No. 1's formulation more closely tracks *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979). *Smith* states that "where there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing facts." *Id*. *Smith* relies on *Champlin* and an analogy to equitable estoppel to conclude that "an estoppel may arise as effectually from silence, where there is a duty to speak, as from words spoken." *Id.* (citing *Champlin Oil & Ref. Co.*, 403 S.W.2d at 376).

11

We need not attempt to pigeonhole the precise theory of estoppel captured by Question No. 1 because this record contains no evidence of a misrepresentation by Inland American; no evidence of affirmative concealment by American Inland; and no circumstances creating a duty on Inland American's part to provide notice of non-payment in contradiction of Friedman's guaranty agreement with the landlord, under which he "expressly waives notice of non-payment, protest and notice of protest with respect to any indebtedness covered hereby."[4]

Reviewing this record against the charge as submitted, we sustain Inland American's challenge on appeal that there was no evidence to support the submission or jury answer to Question No. 1.

## III.   Mitigation

Resolution of Inland American's challenge to Question No. 1 does not fully resolve this appeal because the amount for which Friedman is liable as guarantor still must be addressed.

Brewer's uncontroverted trial testimony established that $338,970 was owed for unpaid rent under the Abundant Caterers lease on the Tomball Town Center location, and $181,333.53 was owed for unpaid rent under the Abundant Caterers lease on the Spring Town Center location. The final judgment awards these amounts jointly and severally against Abundant Caterers and Whistling Ducks.

The jury awarded $201,000 in a single answer blank in response to Question

---

[4] Friedman contends in the alternative that the jury's "yes" answer to Question No. 1 is supportable based on a theory of "quasi estoppel" discussed in *Steubner Realty 19*, 817 S.W.2d at 164, under which a party "with knowledge of the facts" is precluded "from taking a position inconsistent with his or her former position to the disadvantage or injury of another . . . ." It is doubtful that Question No. 1 as submitted can be stretched far enough to encompass a quasi estoppel theory based on Inland American having taken a position inconsistent with its former position. In any event, Friedman identifies no evidence of Inland American having taken inconsistent positions. The absence of notice to Friedman between February and May 2008 is fully consistent with the express waiver of notice of non-payment contained in the guaranty agreement Inland American sought to enforce against Friedman.

12

No. 2, which asked: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate *Inland American Retail Management* for *their* damages, if any, that resulted from Paul Friedman's failure to comply with the terms of the guaranty?" The jury was instructed as follows: "Do not include in your answer any amount that you find *Inland American Retail Management* could have avoided by the exercise of reasonable care."

The record contains no evidence or computations that would account for the difference between (1) the $520,303.53 owed under the two leases pursuant to Brewer's uncontroverted testimony, and (2) the jury's single award of $201,000 in response to Question No. 2.

During direct examination, Friedman was asked: ". . . I'm asking you what you individually believe you could have done to mitigate, to reduce the amount of damages that are taking place?" Friedman testified, "I could have offered assistance." He continued, "I could have gone in and worked. I could have helped him get out of the situation he was in or I could have done something legally to take back the locations and turn them into a profitable business." A follow up question asked: ". . . [W]ere you deprived of doing anything by not being notified prior to the May 9th letter?" Friedman answered: "Yes."

When Friedman's direct examination resumed the next day, he was asked: "Had you known sooner about Mr. Raley not paying the rent, that he was in default, what would you have done once you found out?" Friedman answered: "I would have been willing to go back in and rerun the businesses." Friedman testified that he had significant experience in the restaurant business; had helped to salvage failing restaurants on several occasions; and had run profitable restaurants in the Spring Town Center and Tomball Town Center locations before Abundant Caterers assigned the leases to Whistling Ducks. Friedman testified that he would

13

have been able to take over the two restaurant locations immediately; in response to a question, Friedman agreed that he "would have made sure that all of the rent under the lease would have been paid."

Friedman raised an affirmative defense based on Inland American's asserted failure to mitigate its damages arising from Whistling Ducks and Raley having vacated the two locations and failed to pay rent. A "landlord's duty to mitigate requires the landlord to use objectively reasonable efforts to fill the premises when the tenant vacates in breach of the lease." *Austin Hill Country Realty, Inc.*, 948 S.W.2d at 299. "[T]he landlord's failure to use reasonable efforts to mitigate damages bars the landlord's recovery against the breaching tenant only to the extent that damages reasonably could have been avoided." *Id*.

At most, Friedman's testimony supports a determination that Inland American failed to mitigate. Friedman's testimony does not establish the amount of damages that could have been avoided because it does not support the $319,303.53 suggested by the jury's answer to Question No. 2 or any other specific amount. Friedman has identified no evidence supporting a specific amount in this record with respect to mitigation, and we have found none. "[W]here a defendant proves failure to mitigate but not the amount of damages that could have been avoided, it is not entitled to any reduction in damages." *Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 688 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Accordingly, we sustain Inland American's challenge that no evidence supports the jury's reduction of the uncontroverted rental damages amount in response to Question No. 2.

## CONCLUSION

We affirm the trial court's judgment in part with respect to damages and attorney's fees awarded in favor of Inland American and against Abundant

14

Caterers and Whistling Ducks for unpaid rent. We reverse the trial court's judgment in part and render judgment in favor of Inland American with respect to damages against Friedman individually arising from his liability as guarantor of the lease obligations.


/s/    William J. Boyce
       Justice


Panel consists of Justices Boyce, Jamison and Donovan.

15