02-09-312-CV
















 

 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00312-CV

 

 

HOPPENSTEIN
 PROPERTIES, INC.                                                  APPELLANT

 

V.

 

BILL
 SCHOBER AND ANOTHER                                                        
 
 APPELLEES

MAN’S TREASURE, L.L.C.

 

------------

 

FROM COUNTY COURT
 AT LAW NO. 3 OF TARRANT
COUNTY

 

------------

 

OPINION

 

------------

          This is an appeal from a jury trial on
what damages, if any, a landlord of commercial lease property was entitled to
when the tenant prematurely vacated the leased premises.  In three issues, appellant Hoppenstein Properties,
Inc. challenges the jury’s finding that it failed to mitigate its damages upon
the breach by appellees Bill Schober and Another Man’s Treasure, L.L.C. (issues
one and two) and the trial court’s failure to include in the jury charge that
the breaching tenant bears the burden to prove the landlord’s failure to
mitigate (issue three).  We reverse and
remand.

Factual and Procedural Background

Appellees
as tenant signed a Shopping Center Lease with appellant as landlord.  The lease term began May 1, 2006 and was to
continue for six years and three months. 
Appellees agreed to use the leased premises
for “Furniture/Antique Sales.”

When
appellees first moved into the leased premises, the condition was “not
particularly bad.”  Appellees
did general cleanup, painted, and carpeted one of the rooms.  There were some squirrels inside, which condition
continued to occur periodically while appellees occupied the premises.  Appellees spent
about $40,000 making the space ready.

However,
the business did not do well after moving to the leased premises.[1]  Schober wrote
appellant on December 31, 2006, asking for some of the rent to be deferred,
which appellant agreed to.  But eventually,
on April 1, 2007, appellees vacated the leased premises and informed appellant
by letter. According to Schober, as of that date, the leased premises were “cleaned
up” and in the same condition as when appellees moved
in.

On July
17, 2007, appellant sued appellees for damages for prematurely vacating the
premises.  Appellees
stipulated that they had defaulted on the lease but contended that appellant
had failed to mitigate its damages. 
After a trial, a jury awarded appellant $5,500 in damages although
appellant had asked for $107,584.54.  Appellant appeals from the jury’s verdict.

Legal
and Factual Sufficiency of Jury’s Damages Award

In
its first two issues, appellant challenges the legal and factual sufficiency of
the jury’s $5,500 damages award. 
According to appellant, there is no evidence to support the jury’s
implied finding that appellant wholly failed to mitigate its damages caused by appellees’
breach of the lease, or, in the alternative, the evidence supporting that
finding is too weak or against the great weight and preponderance of the
evidence.

Standard of Review

We
may sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361,
362–63 (1960).  In determining whether
there is legally sufficient evidence to support the finding under review, we
must consider evidence favorable to the finding if a reasonable factfinder
could and disregard evidence contrary to the finding unless a reasonable
factfinder could not.  Cent.
Ready Mix Concrete Co. v. Islas,
228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When
reviewing an assertion that the evidence is factually insufficient to support a
finding, we set aside the finding only if, after considering and weighing all
of the evidence in the record pertinent to that finding, we determine that the
evidence supporting the finding is so weak, or so contrary to the overwhelming
weight of all the evidence, that the answer should be set aside and a new trial
ordered.  Pool v.
Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986)
(op. on reh’g); Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965); In re King’s Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  When,
as here, the party without the burden of proof on a fact issue complains
of an adverse fact finding, that party must show that there is “insufficient
evidence” supporting the finding, that is, that the evidence supporting the
finding is too weak or that the finding is against the great weight and
preponderance of the evidence contrary to the finding.  See Garza, 395
S.W.2d at 823; W. Wendall Hall, Standards of Review in Texas, 38 St.
Mary’s L.J. 47, 263, 265 (2006).

Applicable Law

A landlord has a duty to make reasonable efforts to mitigate
damages when the tenant breaches the lease and abandons the property.  Tex. Prop. Code Ann. § 91.006(a) (Vernon
2007); Austin Hill Country Realty, Inc.
v. Palisades Plaza, Inc., 948 S.W.2d 293, 299 (Tex. 1997); Landry’s Seafood House-Addison, Inc. v.
Snadon, 233 S.W.3d 430, 436 (Tex. App.––Dallas 2007, pet. denied).  The landlord’s failure to use reasonable
efforts to mitigate damages bars the landlord’s recovery against the breaching
tenant only to the extent that damages reasonably could have been avoided.  Austin
Hill Country Realty, 948 S.W.2d at 299.  However, the landlord is not required to
simply fill the premises with any willing tenant; the replacement tenant must
be suitable under the circumstances.  Id.

A
tenant’s assertion that a landlord failed to mitigate damages is an affirmative
defense.  Austin Hill Country Realty, 948 S.W.2d
at 300; McGraw v. Brown Realty Co.,
195 S.W.3d 271, 277 (Tex. App.––Dallas 2006, no pet.).  Thus, the tenant
properly bears the burden of proof to demonstrate that the landlord has failed
to mitigate damages and the amount by which the landlord could have reduced its
damages.  Austin Hill Country Realty, 948 S.W.2d at 300.  A
defendant is not entitled to any reduction in the amount of damages if it does
not prove the amount of damages that could have been avoided.  Cole
Chem. & Distrib., Inc. v. Gowing, 228 S.W.3d 684, 688 (Tex.
App.––Houston [14th Dist.] 2005, no pet.); Broken
Spoke Club, Inc. v. Butler, No. 02-02-00116-CV, 2004 WL 1858119, at *2–3
(Tex. App.––Fort Worth Aug. 19, 2004, no pet.) (mem.
op.).  The policy underlying mitigation
is to avoid waste rather than penalize the mitigating party for not doing
enough.  See Austin Hill Country Realty, 948 S.W.2d at 298–99; MOB 90 of Tex., L.P. v. Nejemie
Alter, M.D., P.A., No. 13-08-00173-CV, 2009 WL 1026603, at *3 (Tex.
App.––Corpus Christi Apr. 16, 2009, no pet.) (mem.
op.).

Applicable Facts

          Norman Hoppenstein,
who is appellant’s vice president and a shareholder, testified that appellees’
initial minimum guaranteed rent was $840 per month, plus triple net charges,[2]
for the first month and for months five through twenty-four. According to Hoppenstein, the rent was “very reasonable” for such a
large space. Adding the triple net charges, the total rent payment was $2,500
per month.  For months twenty-five through
forty-eight, the total monthly rent increased to $3,000 per month ($1,340
minimum guaranteed rent plus triple net expenses).  The lease also provided for a ten percent
late fee if appellees did not timely pay rent by the first day of each month.

          Hoppenstein testified that appellant
received the last full rent payment from appellees on December 8, 2006 and that
it received two $1,000 payments thereafter. 
Although appellees did not pay the full rent
for January and February, appellant did not start charging them a ten percent
late fee each month until March 2007.  Appellant
calculated as part of its damages fourteen late fees of $84 and twelve late
fees of $134, based on a percentage of the increased rent beginning in month twenty-four.

          After appellant received notice from
appellees that they had vacated the space, appellant “contracted to have a
for-lease sign up.  And . . . start[ed] answering inquiries about the space from people who
might be interested in leasing the space.” 
Hoppenstein also said that appellant
“continued to show the space . . . [and] spoke[] to a
number of people.”  He testified that
appellant eventually leased part of the space to a hookah bar but had to spend
$56,041.88 to renovate that part of the space for the new tenant.[3]  Hoppenstein could
not recall whether he got any additional bids for the improvements that were
done for the hookah bar.

At
the time of trial, the hookah bar was paying rent at a higher rate than the
rate appellees were obligated to pay in their lease.  Appellant credited the rental paid by the
hookah bar to appellees’ outstanding rent. 
The total credit appellant applied to appellees’ lease was $14,783,
after applying (1) credits for reconciliation of the triple net charges and for
the $2,500 security deposit and (2) a debit for the cost of the renovations to
the premises for the hookah bar. Appellant asked for total damages of
$107,584.54.

Schober
testified that around the time he started to vacate the premises, he heard that
another business owner in the center, Ken Cook, might be interested in leasing
the leased premises.  According to Schober, when he talked to Cook, Cook said, “[T]hat’s going
to be just what I need,” and later came to see the leased premises.

          Cook testified that he owns an “ad
specialty business,” printing T-shirts and making embroidery, signs, banners,
and advertising-type items.  At the time
of trial, he had been in business for fifteen years.

          According to Cook, when he moved his
business into the shopping center, next to a bingo hall, appellant’s leasing
agent called and said that people at the bingo hall were complaining about the
odor released when he printed a certain type of sign that he prints frequently.  He tried to reduce the odor, but the
complaints continued until appellant’s leasing agent called and told Cook he
could no longer print those types of signs on the premises.  The leasing agent was the only person he had
ever dealt with on behalf of appellant.

          Cook moved the sign printing operation
to his home garage, but that was a failure. 
Around that same time, he realized that appellees had moved out and
tried to contact them to see if he could move into their space because it was
in a different building and isolated from other tenants.  Cook testified that when he talked to
Hoppenstein about leasing appellees’ property, Hoppenstein said “that if I
moved in there, he wouldn’t be able to go after Mr. Schober and that he didn’t
think that space would do me any good any more - - do me any better than the
space I was in.”  Even after Cook explained
to Hoppenstein the situation regarding the signs and how appellees’ space was
better situated for his business, Hoppenstein said that he did not think it
would help and recommended another landlord down the street.  Cook testified that he would not have needed
any improvements to appellees’ leased premises and did not request any.  He eventually had to abandon his lease with
appellant; appellant sued him for the breach and obtained a judgment for
$21,000.

          Hoppenstein testified that he did not
rent appellees’ leased premises to Cook for “a number of reasons.”  He remembered that Cook had approached him
about swapping his leased premises for appellees’ and that Cook had said he
wanted a small retail location for walk-in business.  Hoppenstein told
Cook that he would be better off with a location closer to the street, rather
than one so far back from the street; the shopping center is in a U-shape, and
appellees’ leased premises was in the center of the U bend, farther away from
the street than the other leased premises, although facing the street.

          Hoppenstein also explained that by
moving Cook to appellees’ vacated premises, he would not be mitigating any
damages because he would be moving a tenant from one leased premises to another
in the same center; thus, he would lose money on one or the other.  He would also not be able to mitigate the
fumes problem that was already occurring. 
Finally, Hoppenstein knew that Cook was having
financial problems, which was of concern because he would be moving his
business into an even bigger space.  Hoppenstein showed the jury rent checks from Cook that had
been returned with the notation that the bank account on which the check was
drawn had been closed.

          Hoppenstein testified that appellant
advertised vacancies by putting up for lease signs in the vacant premises and putting
one on the street near the shopping center; he also testified that some companies list vacant space for other brokers and that those
companies call landlords periodically. 
But Hoppenstein did not say whether he responded to any of those phone
calls or if he even got any.  He also testified
that the center was quite large and very difficult to lease because it was
built in the 1960s and not suited for retail.

          Analysis

          The jury awarded appellant only $5,500,
which is the amount of the past due rental that had accrued before appellees
vacated the premises.  The jury did not
award any amounts––rental, late fees, cost of improvements to the premises (all
authorized by the lease agreement in the event of a tenant default)––for any
time after appellees vacated the premises.

          Appellees had the burden of proving
the amount of damages appellant could have avoided.  Austin
Hill Country Realty, 948 S.W.2d at 299; McGraw, 195 S.W.3d at 277.  But appellees failed to prove that appellant
could have immediately rented appellees’ premises and therefore avoided all damages.  See
Cole Chem., 228
S.W.3d at 688.  Neither Cook nor
Schober testified as to when Cook could have moved into and begun paying rent
on appellees’ leased premises.  Schober
said he heard Cook was interested in renting the premises “around the time”
appellees vacated.  Cook testified that
when he called to check on the availability of the premises, a woman told him
appellees had already moved out; Cook tried to call appellant’s leasing agent,
who did not return his calls.  Cook then
called appellant, and someone told him the leasing agent had been fired; he
left a message for Hoppenstein, who took about a week to return the call.  Although Cook testified that he was able to
immediately move into appellees’ premises, the evidence shows that there would
have been at least some gap between appellees’ vacating the premises and Cook’s
moving in regardless of appellant’s efforts or lack thereof.

Likewise,
neither Schober nor Cook offered evidence as to how long it would have taken
appellant to find a replacement tenant for Cook’s premises, which would have remained
vacant if Cook had moved into and started paying rent on appellees’
premises.  The minimum rental on Cook’s
premises was $2,187 per month, which appellant would not have been able to collect
if Cook had moved into appellees’ premises and started paying appellees’
minimum rental.[4]  Moreover, appellant produced evidence that
two of Cook’s March rent checks had been returned because the account on which
they were written was closed.[5]  See MOB
90 of Tex., L.P., 2009 WL 1026603, at *3 (noting that court had found no
Texas law requiring landlord to work with breaching tenant to mitigate
damages).

          Appellees did bring forward evidence
that Hoppenstein was not interested in mitigating appellant’s damages; however,
they failed to prove that appellant was not entitled to any post-abandonment
damages whatsoever.  See Cole Chem., 288 S.W.3d at 688.  In addition, although appellees presented
evidence that the $56,041.88 appellant spent on renovating the abandoned
premises was unreasonable––in that the amount of renovations exceeded the total
minimum rental payable for the two-year initial term of the hookah bar’s
lease––appellees failed to prove that no renovation would have been necessary.[6]

          In effect, appellees presented
evidence that appellant unreasonably failed to mitigate at least some of the
damages it pled and proved at trial but failed to prove that it could have
avoided all damages from the time appellees vacated the premises.[7]  Accordingly, we conclude and hold that the
evidence is factually insufficient to support the jury’s finding that appellant
sustained only $5,500 in damages from appellees’ breach.  See Cadle Co. v. Regency Homes, Inc., 21 S.W.3d 670, 681–82 (Tex.
App.––Austin 2000, pet. denied) (op. on reh’g).  We overrule appellant’s first issue but
sustain appellant’s second issue.

Instruction on Mitigation Did Not
Improperly Shift Burden of Proof

          In its third issue, appellant contends
that the trial court reversibly erred by failing to charge the jury that
appellees had the burden to prove whether appellant failed to mitigate its
damages as result of the breach, thus shifting the burden of proof on the
mitigation issue.[8]

At
the charge conference, the trial court agreed to include the following question
in the charge, “What sum of money, if any, if paid now in cash would fairly and
reasonably compensate [appellant] for its damages, if any, that resulted from
the breach of the lease?”  The court also
proposed the following, “Do not include in your answer any amount that you find
[appellant] could have avoided by the exercise of reasonable care.”  Appellant’s counsel objected to that part of
the charge because “[t]he standard should be whether
[appellant] reasonably mitigated [its] damages, not whether [it] exercised
reasonable care.”  The trial court
declined to change the question and appellant stated one more objection:  “On this question about the exercise of
reasonable care, it should have a burden of proof, that the defendants [appellees]
have the burden of proof in proving that he [appellant] didn’t exercise
reasonable care.  At
least a general instruction.” After argument, the trial court overruled
that objection as well.  The trial court
submitted the following to the jury:

QUESTION
NO. 1

What
sum of money, if any, if paid now i[n] cash, would fairly and reasonably
compensate [appellant] for its damages, if any, that resulted from breach of
the lease?

 

          Do not include in your answer any
amount that you find [appellant] could have avoided by the exercise of
reasonable care.

 

Do
not add any amount for interest on damages, if any.

 

Answer
in dollars and cents for damages, if any:

 

          Appellees contend that appellant
failed to preserve its complaint about this issue.  Appellant submitted its own question on
damages and objected to appellees’ proposed instruction on their affirmative
defense of mitigation.  Appellees contend
that to preserve its objection, appellant needed to additionally request a
replacement instruction in writing.  But
appellant’s objection was all that was needed to preserve the issue as to the
instruction because the trial court submitted it.  See
Religious of Sacred Heart of Tex. v. City of Houston, 836 S.W.2d 606, 614
(Tex. 1992) (“Objection, however, is the proper method of preserving complaint
as to . . . an issue actually submitted, but claimed to be defective.” (quoting Lyles v.
T.E.I.A., 405 S.W.2d 725 (Tex. Civ. App.––Waco 1966, writ ref’d n.r.e.)).  Thus, we hold that appellant preserved this
issue for our review.

          Rule 277 provides that “[t]he placing
of the burden of proof may be accomplished by instructions rather than by
inclusion in the question.”  Tex. R. Civ.
P. 277.  “Thus, the Rules of Civil
Procedure contemplate that the jury can be instructed about applying the burden
of proof in two ways:  [by] an admonitory
instruction or by placement of the
burden through the question.”  In re Commitment of Beasley,
No. 09-08-00371-CV, 2009 WL 3763771, at *7 (Tex. App.––Beaumont Aug. 6, 2009,
pet. denied).  Here, the
instructions before the questions include the following:

Answer “Yes” or “No”
to all questions unless otherwise instructed. 
A “Yes” answer must be based upon a preponderance of the evidence unless
otherwise instructed.  If you do not find
that a preponderance of the evidence supports a “Yes” answer, then answer “No.” 
Whenever a question requires an answer other th[a]n “Yes” or “No,” your
answer must be based on a preponderance of the evidence unless otherwise
instructed.

 

Thus,
here, the trial court defined the proper burden of proof for the question in
the instructions in the charge; rule 277 requires no more.  See
Tex. R. Civ. P. 277; Austin Hill Country
Realty, 948 S.W.2d at 299.  Accordingly, we conclude and hold that the
trial court did not reversibly err by refusing to include appellant’s requested
addition to the question.

          We overrule appellant’s third issue.

Conclusion

          Having overruled appellant’s first and
third issues, but also having sustained appellant’s second issue, we reverse
the trial court’s judgment and remand for a new trial.  See
Cadle Co., 21 S.W.3d at 681–82.

 

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

 

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

 

DELIVERED:  November 18, 2010











[1]Appellant’s
business had done well in a prior location in another city, but he had to move
because that landlord took over his space.





[2]A
triple net lease is one in which the tenant’s rent includes a percentage of the
landlord’s real property taxes, insurance, and common area maintenance charges
for the property in addition to the basic rent.





[3]Hoppenstein
also testified that the day before trial, a banquet hall signed a lease for the remainder
of the premises but that the lease would not be effective until the prospective
tenant obtained all necessary municipal approvals.





[4]Hoppenstein
testified that a man named Mike Pope had moved into and was paying rental on
Cook’s premises, but appellees did not produce evidence as to when Pope moved
into those premises.  When asked on
cross-examination whether it was November 1, 2007, Hoppenstein replied that he
did not know; appellees did not produce a lease or other proof of when Pope moved
into those premises.





[5]Cook
also testified that his business had been doing poorly since it had been
burglarized and because of the poor economy.





[6]Cook
testified that he would have been willing to rent the premises as-is, but as we
have explained, appellant was not required to work
with him as a tenant because his rental checks for his own space were being
returned for a closed account.  See MOB 90 of Tex., L.P., 2009 WL 1026603, at *3.





[7]Appellees
did not plead or prove the affirmative defense of waiver.





[8]Even
though we will remand because of our disposition of appellant’s second issue,
we nevertheless address appellant’s third issue because it could be raised
again at a second trial.